[L. A. No. 13744. In Bank.—April 30, 1934.]

THIRD AND BROADWAY BUILDING CO. (a Corporation) et al., Respondents, v. COUNTY OF LOS ANGELES, Appellant.

Everett W. Mattoon, County Counsel, and Gordon Boller, Deputy County Counsel, for Appellant.

C. Stanley Wood, City Attorney (Oakland), and John W. Collier, Deputy City Attorney, as *Amici Curiae* on behalf of Appellant.

Frank James, Everett H. Mills and Henry Herzbrun for Respondents.

Daniel E. Farr, W. Torrence Stockman, Albert M. Monaco, Heller, Ehrman, White & McAuliffe, Bianchi & Hyman, C. G. Morse, Todd W. Johnson and Philip D. Johnson as *Amici Curiae* on behalf of Respondent.

LANGDON, J.—This is an action by plaintiffs to recover taxes paid to defendant county on the ground that a part of the property taxed was operative property of a public utility and thus exempt from local taxation.

The facts are simple and undisputed. The property consists of land improved by the Edison Building, an eleven-story structure located at Third and Broadway Streets in Los Angeles. Plaintiff Third and Broadway Building Company has the beneficial interest under a 99-year lease. Plaintiff Citizens National Trust & Savings Bank holds the legal title under a deed of trust from Third and Broadway Building Company, as security for a bond issue. During the tax years 1927–1928, 1928–1929, 1929–1930 and 1930–1931, a certain portion of the building (the upper eleven floors and substantially all of the basement) was used by the Southern California Edison Company, a public utility, as general offices, under a lease. The building also contains a theater, stores and some space not leased to the utility.

In its report of operative property to the state board of equalization in 1927, the Edison Company did not include the leased part of the building, nor did it report the property as such to the tax assessor of the county. In 1928, 1929 and 1930, it did report it as operative property, described as "general offices", to the state board, with the required duplicate to the county assessor. During these years, however, the plaintiff bank, as holder of the legal title, made its statement of the property to the assessor, and the building was assessed and taxes levied thereon and paid throughout the period, in the total sum of $135,795.51, by plaintiff Third and Broadway Building Company. Subsequently the company filed its claims with the board of supervisors of the defendant county for a refund of $95,057.56, or seventy per cent of the amount of taxes paid, based upon a seventy per cent use of the building by the utility in its business. Upon rejection of the claims, this action was commenced. Defendant county answered and

plaintiffs moved for judgment on the pleadings. A stipulation of facts was entered into by the parties, and the court gave judgment for plaintiffs in the sum of $71,980.50 and costs. Defendant county brings this appeal.

The basic question raised is whether the building, by reason of its exclusive use in part by a public utility in its business, is as to such part exempt from local taxation. The principles which govern the answer to this question have in the main been clearly laid down in prior decisions. The system of state taxation of the gross receipts of public utilities was established by constitutional amendment in 1910 (Cal. Const., art. XIII, sec. 14), and was elaborated upon in the Political Code (sec. 3664 et seq.). The scheme was abandoned by constitutional amendment in 1933, effective January 1, 1935 (Cal. Const., art. XIII, secs. 14, 14½), but the old law governs this action. Under the plan thus created in 1910, the utilities pay to the state a tax upon their gross receipts, in lieu of all other taxes, on ''property or any part thereof used exclusively in the operation of their business in this state''. (Cal. Const., art. XIII, sec. 14(a).) This is described in the statute as ''operative property''. (Pol. Code, sec. 3665b.) Property not so used, that is, nonoperative property, is taxable locally. The theory of the system is that the percentage of the gross receipts is a fair equivalent of a tax on the property itself, and that the property of the utility is not exempted from taxation, but is subjected to this substituted tax. Operative property contributes to the earning of income, and is therefore considered as taxed by the gross receipts tax. Nonoperative property does not contribute to the income and is not reached by the substituted tax; hence, it is taxable locally in order that all property be taxed in proportion to its value by either the state or local government. (See *Southern Cal. Tel. Co.* v. *County of Los Angeles*, 212 Cal. 121 [298 Pac. 9].)

The problem created by the operative use of *leased* property has also been definitely settled. ■ Property used by a utility in its business, though as lessee and not as owner, is nevertheless exempt from local taxation. If this were not the rule, then double taxation would certainly fall upon that property, for the utility-lessee would pay through the tax on its gross earnings, and the owner-lessor would pay a property tax locally assessed. This court, following the United

States Supreme Court, has condemned such a tax. (*Morgan Adams, Inc.*, v. *County of Los Angeles*, 209 Cal. 696 [289 Pac. 811]; *Hopkins* v. *Southern Cal. Tel. Co.*, 275 U. S. 393 [48 Sup. Ct. 180, 72 L. Ed. 329]; *Central Mfg. Dist.* v. *State Board of Equalization*, 214 Cal. 288 [5 Pac. (2d) 424].)

█ The question is thus narrowed down to the effect of use, not of an entire unit of property as in the Morgan Adams case, but of a portion thereof, under such a lease. The Edison Company has used certain clearly identifiable portions of the building, during the taxable years, exclusively in the operation of its business. Under the theory of the gross receipts tax, this part of the property has been taxed by the state. Must the owner of the building pay another tax on such part of the property?

The defendant county holds that it must, on the theory that the building and land constitute a unit, not severable, and that an apportionment of tax between that part operatively used by the utility, and the balance of the structure, is neither practically nor constitutionally possible. Reliance is chiefly upon the leading case of *Lake Tahoe Ry. & Transp. Co.* v. *Roberts*, 168 Cal. 551 [143 Pac. 786, Ann. Cas. 1916E, 1196]. There the plaintiff corporation owned a railroad, and steamers operated on Lake Tahoe. The boats were used both in connection with the railroad business of plaintiff, a public utility, and for traffic on the lake, unconnected with the railroad business. The court held that a steamboat was manifestly "a single, indivisible fabric"; and that it was not "used exclusively" in the operation of its railroad business. Hence, it was subject to local and not to state taxation.

The Lake Tahoe case unquestionably reaches a sound conclusion, for the steamboat *as a whole* was used in both businesses, and, hence, was not "used exclusively" in the utility business. There is no warrant in the Constitution for distinguishing between complete and partial *use* of an indivisible unit of property. But the property involved herein is of a different character. Here, a clearly defined *part of the property* is *wholly and exclusively used* in the business of the utility. It is perhaps difficult, but it is not impossible or unusual, to assess and tax separately the remaining portion of the building.

The other points are two: Whether the plaintiff is precluded by an alleged failure of the Edison Company to re-

port the leased space as operative property to the board of equalization as required by section 3665c of the Political Code, and whether the plaintiff is estopped by the return of the property to the local assessor.

In the year 1927, the Edison Company failed to report the property as operative; in the other years, it reported it generally, but defendant county claims that the report was inadequate. We are not impressed with this argument, for the description, while brief, seems sufficient to place the assessor upon notice of the claim. However, there was a failure to report it in 1927, and for the purposes of this appeal, we may assume that it was not property reported in 1928, 1929 and 1930. Defendant then concludes that the utility is estopped to question the classification as nonoperative property, on the theory that the state board of equalization is given exclusive original jurisdiction to determine its character.

Whether this position is sound, as regards the utility, is a question not involved in this case. The utility does not own the property taxed herein. The owner, on the other hand, is neither authorized nor permitted by the statute to make a report of the property to the state board of equalization. Thus the position of defendant county on this issue is that the owner may be taxed on property which has already, through the medium of the gross receipts tax, paid its tax, and this because the owner's right of exemption has not been pressed before a body to which he has no access, and before which he has no standing. Defendant says that the lessee utility is the ''agent'' or ''representative'' of the lessor for the purpose of making this claim of exemption for operative property. But there is nothing in the statute which suggests that the legislature contemplated such representation. In fact, the language of the Constitution and statute, and the course of litigation construing them, would indicate that the problem of owner-lessor and utility-lessee was not anticipated by the legislature. Certainly no procedure to protect the right of the owner, save a suit for taxes improperly levied, is to be found.

We think that the right of the owner-lessor to test the validity of the assessment in a court of competent jurisdiction is not denied, and is, in fact, specifically recognized in article XIII, section 14g, of our Constitution: ''after pay-

ment action may be maintained to recover any tax illegally collected in such manner and at such time as may now or hereafter be provided by law''.

■ We are likewise unimpressed with the argument that the statement of the property to the assessor estopped the taxpayer from subsequently claiming that it was not taxable. The chief element of estoppel, reliance by the defendant upon a representation to its detriment, is lacking. No loss has been suffered by the county; it has collected a tax not legally authorized, and it must refund it. If, by reason of the return, the assessor was in some way induced to forego a right of the county, there might be some justification for the contention. But holding as we do that the property is operative, the taxpayer has an undoubted right to recover the illegal tax. (See *Slade* v. *County of Butte,* 14 Cal. App. 453, 461 [112 Pac. 485].)

We may add that this conclusion was forecast by our denial of a hearing in the case of *Third & Broadway Bldg. Co.* v. *Southern California Edison Co.,* 132 Cal. App. 186 [22 Pac. (2d) 574], where the District Court of Appeal held that the local taxes levied upon the portion of this building leased to the utility (70%) were illegally assessed and void.

The judgment is affirmed.

Preston, J., Waste, C. J., Curtis, J., and Seawell, J., concurred.

SHENK, J., Dissenting.—I dissent. It is admittedly true: That the plaintiff, a private corporation, is the beneficial owner of the entire Edison Building; that the portion of the building leased to the Edison Company on a 15-year lease from 1918 to 1933, constitutes but 43.27 per cent of the whole building; that for three tax years (1927, 1928 and 1929) the holder of the legal title returned the entire building to the assessor for assessment to itself as the owner; that for the year 1930 no such return was made, and the assessor assessed the building to the private owner as theretofore; that for the year 1927 the utility company made no mention of the property in its return of operative property to the state board of equalization; that for the years 1928, 1929 and 1930 the only mention of the property in the return to the state board was included in an item designated ''General

Offices (leased property) '', following a list of other property classed as operative and particularly described by lot and block number, and that the reason the assessor did not notify the state board of equalization that he regarded the Edison Building as nonoperative or as partially operative and partially nonoperative was because he understood and believed that the Edison Company had not claimed and did not intend to claim that said leased property was operative property.

That the property occupied as leased premises was subject to assessment cannot be questioned. It was assessable to the private owner unless removed from the local tax-roll as operative property in the manner provided by law. Whether it should be so removed depended upon a question of fact. That fact is ascertained in two ways: First, by the report of the utility company to the state board of equalization without objection by the local assessor and, secondly, by the state board of equalization upon objections by the assessor. If the property is not claimed by the utility company as operative in its report to the board it goes on the local roll as a matter of course and is taxed accordingly. In the case of a dispute, and there is none unless the utility company claims it as operative, the controversy is settled in the first instance by the state board, subject thereafter to review by the courts. (*Great Western Power Co.* v. *City of Oakland,* 189 Cal. 649, 655 [209 Pac. 553].)

The procedure for the determination of whether property is operative or nonoperative is laid down in sections 3665c and 3666 of the Political Code, and the proceeding is in the nature of a proceeding *in rem*. As stated, if the property is not included as operative by the utility company it is not taxed by the substituted method. This was unquestionably the case as to the 1927 tax. But it is contended that the lessor-owner is not subject to the laws providing how public utility property shall be classified for the purposes of taxation. But the property was leased to the utility company subject to those laws and the lessor-owner is subject to the local tax unless the property is classed as operative in accordance therewith, just as in such a case the utility company would be locally taxed therefor. It cannot be said that the owner-lessor is without means of protection. In the first instance it is incumbent on him to see that his property is

classed by the lessee as operative, if it be such. In the event of a refusal by the lessee to do so, the law would undoubtedly afford a remedy either by compelling its inclusion or in damages for an unwarranted refusal. With respect to the tax years 1928, 1929 and 1930, the report of the utility company to the state board was plainly insufficient to classify these particular leased premises as operative property. As to all other property, real and personal, claimed in those years to be operative, a description thereof, by lot and block or location, with the assessed valuation, was specifically set forth. Included therein was a claim of operative property for *office* furniture and equipment, of a specific valuation, and located in the Fay Building, the Laughlin Building, the Edison Building and Second and Boylston. Notwithstanding these facts the trial court determined as a matter of law that the item ''General Offices (leased property)'', was a claim of exclusion from local taxation of the property held under lease in the plaintiff's building. I am satisfied that there was every reason for the conclusion on the part of the assessor, as admitted by the pleadings, that there was no intention on the part of the Edison Company in its report to the state board to claim the space occupied by it as operative property. Also, there would seem to be a plain case of estoppel on the part of the owner-lessor because of its return of this building to the assessor for the years 1927, 1928 and 1929 as property for which it should be taxed. The amount of the refund is large and if the leased property be declared improperly on the local tax-roll the county will have been seriously crippled in its fiscal arrangements. This is not the case of an erroneous assessment as matter of law. It may or may not be erroneous depending on the facts as they exist or in this case as represented by the owner to be while the assessor still had power to act. The owner has led the assessor, as to said three years, to believe that certain facts were true, and should not in this litigation be permitted to contend otherwise. (Sec. 1962, subd. 3, Code Civ. Proc.)

Rehearing denied.

Shenk, J., and Spence, J., *pro tem.*, dissented.