[Civ. No. 1540.   Fourth Appellate District.—January 19, 1935.]

ASSOCIATED OIL COMPANY (a Corporation), Appellant, v. COUNTY OF ORANGE, Respondent.

Robert M. Searls, Harrison Guio, Paul O. Broxon and Humphrey, Searls, Doyle & MacMillan for Appellant.

S. B. Kaufman, District Attorney, and W. F. Menton, Assistant District Attorney, for Respondent.

BARNARD, P. J.—The plaintiff, as the owner of an oil and gas leasehold interest in certain real property in the County of Orange, brought this action to recover an over-payment of taxes for the fiscal year 1928–29, on its mineral rights under the lease. In April, 1928, the plaintiff furnished to the county assessor, at his request, a sworn statement of its real and personal property including a statement of its production of oil from the real property covered by this lease for the preceding year. This statement of production was to be used by the assessor for the purpose of determining the assessed value of the mining or mineral rights owned by the plaintiff. By mistake, the statement so furnished set forth that 486,096 barrels of oil had been produced on the property during the preceding year, whereas, in fact, only 126,132 barrels of oil had been produced thereon during that period. In fixing the assessment on the plaintiff's interest in this property, the assessor employed the method used by him in assessing the mining or mineral rights in all oil-producing properties in said county. He took the number of barrels of oil produced during the twelve months prior to March, 1928, multiplied this number by 60 cents per barrel, subtracted the proportion representing the land owner's interest, took the balance as the value of the lessee's interest, and applied the tax rate to that value, thus determining the amount of the assessment against the lessee's interest.

While the method employed in assessing the plaintiff's interest in this property was exactly like that employed in assessing all similar interests in the county, by reason of the error with respect to the amount of oil which had actually been produced during the preceding year, the amount of the tax assessed against the plaintiff and paid by it was $7,923.57 more than it should have been. The mistake was not discovered until May, 1929, and seasonably thereafter the plaintiff filed with the board of supervisors its verified claim under section 3804 of the Political Code for a refund in the amount of the excess paid, which claim was approved by the assessor. The board of supervisors rejected the claim and this action was brought within the time required by the statute referred to. The court found in accordance with the facts above set forth and also found "that said amount of 486,096 barrels of oil was, through inadvertence, error and clerical mistake of an employee of plaintiff when preparing the said statement and without any intent to mislead, deceive or defraud defendant, inserted by plaintiff in said statement of production", and "that the assessed value placed on said mining or mineral rights by said assessor as aforesaid was by reason of said error and mistake excessive and unjust to plaintiff". And as a conclusion of law the court found that "the tax paid pursuant to the said unjust and excessive assessment levied by the assessor of the county of Orange, as aforesaid, was not a tax 'erroneously or illegally collected' within the meaning of section 3804 of the Political Code, and the court is without power to remedy or change said assessment or to order refund of any taxes levied and/or paid thereon". Judgment was entered for the defendant and the plaintiff has appealed.

The facts are undisputed and the question presented is entirely one of law. It is well settled that the only relief open to a taxpayer in case of an overvaluation of his property is to be obtained by making timely objection before the board of supervisors sitting as a board of equalization. On the other hand, section 3804 of the Political Code provides another method of relief where taxes have been erroneously or illegally collected. While the statute referred to uses the word "may" in connection with the refund of any amount erroneously or illegally collected as

taxes, it has been held that this word is to be construed as "shall". (*Hayes* v. *County of Los Angeles*, 99 Cal. 74 [33 Pac. 766].) The essential question here is whether, under these facts, the excess amount paid is to be considered as taxes erroneously collected, within the meaning of the code section referred to, or whether there appears merely a case of overvaluation of the appellant's property.

The respondent, contending that a mere overvaluation appears, relies upon the case of *Southern California Hardwood etc. Co.* v. *Los Angeles County*, 49 Cal. App. 712 [194 Pac. 62]. In support of the other contention the appellant mainly relies on the case of *Pacific Coast Co.* v. *Wells*, 134 Cal. 471 [66 Pac. 657]. In the first of these cases a statement was furnished to the assessor by the taxpayer showing credits and solvent debts owed to it by others in a certain amount and unsecured debts owed by it in an equal amount. Immediately, and with the knowledge of the taxpayer, the assessor altered each of these figures in such a way as to show a balance of assessable property in a certain amount. The original statement furnished by the taxpayer was intended to be tentative, and the assessable value then fixed by the assessor was also understood to be subject to change in the event the assessor should later determine that a certain debt owed by the taxpayer was properly deductible from the net amount of its taxable assets. The figure then fixed by the assessor was not changed, however, and the question presented was whether the assessor's mistaken belief that the indebtedness last referred to was not deductible, with a consequent excessive assessment, entitled the taxpayer to recover the excess tax paid under the provisions of section 3804 of the Political Code. In effect it was held that the taxes in question were neither erroneously nor illegally collected, that the erroneous undervaluation of the deductible debts amounted merely to an overvaluation of the assessable property, and that the taxpayer, not having applied to the board of equalization for a revaluation of his property, was without remedy.

While some of the language there used seems to support the contention of the respondent here, that language should be considered in connection with the facts there involved. In that case, in so far as the excess tax was concerned, all of the facts were placed before the assessor. He was in-

formed as to what assets the taxpayer had and of the amount of the debt which it was claimed should be deducted. Whether or not he made a mistake in applying the law, the assessor was engaged in valuing certain assets which were correctly reported to him. With the knowledge of the taxpayer, he fixed a certain valuation on the property. There was a difference of opinion at the time between the taxpayer and the assessor as to whether or not this valuation was correct, and the taxpayer failed to ask for a revaluation at the hands of the board of equalization. In all of these respects a materially different case is presented by the record now before us.

While in one sense it is true that almost any mistake which results in an excessive assessment amounts to an overvaluation of the property of a taxpayer, we think there is a real and distinct difference between those cases in which it may properly be said that the error is one of overvaluation and those cases in which the overvaluation is a mere incidental result of an erroneous assessment of property which should not have been assessed. This distinction was recognized in *Brenner* v. *Los Angeles,* 160 Cal. 72 [116 Pac. 397], in which case the court said: "But we are of the opinion that, in so far as *Henne* v. *County of Los Angeles* (129 Cal. 297 [61 Pac. 1081]) places in the same category the mere overvaluation of property in an assessment thereof, and the inclusion in such an assessment of property not taxable at all, that case should be overruled."

In *Pacific Coast Co.* v. *Wells, supra,* relied upon by the appellant, certain property which was not taxable at all was included in the assessment, through a mistake of the taxpayer's bookkeeper in furnishing a statement of property to the assessor. By reason of this mistake the taxpayer's solvent credits were reported in a sum which was $100,000 more than the correct amount. While the assessor thought he saw an error in subtraction in the statement and attempted to correct it, in effect he perpetuated the mistake and adopted as correct the erroneous figure as to the amount of solvent credits owned. The mistake was not discovered until it was too late to seek a revaluation before the board of equalization and, after paying the excessive tax, a refund was sought from the board of supervisors. While a refund was ordered by them, the auditor refused to issue

a warrant and the action followed. In that case the court said:

"We think the facts stated entitled the petitioner to the writ, and that the court erred in sustaining the demurrer. The money so paid to the county as taxes was not due from petitioner. It was the amount of taxes upon an assessment of one hundred thousand dollars, on property that had no existence. It was an assessment made by the assessor in changing the footings of petitioner's assessment. It was paid without consideration, and the city and county have no right to it. Petitioner has paid all its just taxes, and this sum in addition. No doubt, if the assessor had called the attention of petitioner to the statement it had given in, the footings would never have been changed. It was a clerical error that could easily have been explained. When the attention of the assessor was called to it, he recommended that the mistake be corrected. The board of supervisors, representing the county, after investigation, made an order to correct it. Shall the city and county keep the $1,625 regardless of all this? It surely would be in violation of honesty and fair dealing for them to do so. Is it in violation of law for them to refund it? We think not. The board were authorized to order the money refunded, under section 3804 of the Political Code, which provides:

"'Any taxes, penalties, and costs paid more than once, or erroneously or illegally collected, may, by the order of the board of supervisors, be refunded by the county treasurer.'

"This being a remedial statute, it should be liberally construed, so as to carry out its intent and object."

And further:

"It is said by respondent that it would be a dangerous and pernicious doctrine 'to hold that a taxpayer may, whenever he considers that he has made a mistake in his statement, after making a voluntary payment of the amount claimed, apply to the board of supervisors for a return of the amount which he deems he has overpaid'. The doctrine has never been laid down in so broad terms as the imaginary case stated. Undoubtedly, the rule would not apply to correct an assessment where the taxpayer has merely changed his opinion as to the value of his property.

But in a case like this, where it is patent that a mistake was made, and that one hundred thousand dollars was added by the assessor to the total assessment as stated by the taxpayer, it is not a dangerous doctrine to give back to the taxpayer that to which the county has no right.''

In the case just referred to, the actual facts were not before the assessor when the assessment was fixed, due primarily to an error made by the taxpayer's bookkeeper, and as a result property to the amount of $100,000 which was not owned by the taxpayer was included in the assessment. In principle, a similar situation appears in the case at bar. Because of the method employed in assessing this class of property in accordance with the actual production for the preceding year, the error in reporting such production at a figure much too high amounts to the same thing, in so far as the excess is concerned, as reporting property which the appellant did not possess. As a practical matter and in effect, in so far as fixing this assessment is concerned, the appellant reported more property than it had. The erroneous assessment which followed resulted for that reason and because the correct facts were not before the assessor, and not because of any overvaluation of what the appellant actually had. While the assessor intended to and did apply the same measure of value which was applied in all like cases, the same was applied, because of the error, to an incorrect statement of what had been produced and to what amounts to an erroneous statement of what was owned by the appellant.

We think this is a case of erroneous assessment coming within the provisions of section 3804 of the Political Code and not one of mere overvaluation of property, and that the appellant is entitled, legally as well as morally, to a return of the excess amount paid.

The judgment appealed from is reversed.

Marks, J., and Jennings, J., concurred.