[L. A. Nos. 20964, 20968, 20972, 20976, 20980, 20984. In Bank. May 2, 1950.]

W. J. SIMMS et al., Respondents, v. COUNTY OF LOS ANGELES et al., Appellants.

[L. A. Nos. 20965, 20969, 20973, 20977, 20981, 20985. In Bank. May 2, 1950.]

CARRIE D. GRIBBLE, Respondent, v. COUNTY OF LOS ANGELES et al., Appellants.

[L. A. Nos. 20966, 20970, 20974, 20978, 20982, 20986. In Bank. May 2, 1950.]

MERCHANTS NATIONAL REALTY CORP. (a Corporation), Respondent, v. COUNTY OF LOS ANGELES et al., Appellants.

[L. A. Nos. 20967, 20971, 20975, 20979, 20983. In Bank. May 2, 1950.]

SECURITY-FIRST NATIONAL BANK (a National Banking Association), Respondent, v. COUNTY OF LOS ANGELES et al., Appellants.

Harold W. Kennedy, County Counsel, Gordon Boller, Deputy County Counsel and A. Curtis Smith, Assistant County Counsel, for Appellants.

Ray L. Chesebro, City Attorney, Leon Thomas David, Assistant City Attorney, Louis A. Babior and H. H. MacDonald, Deputy City Attorneys, as Amici Curiae on behalf of Appellants.

Holbrook & Tarr, W. Sumner Holbrook, Jr., Freda B. Walbrecht and Francis H. O'Neill for Respondents.

Morrison, Hohfeld, Foerster, Shuman & Clark as Amici Curiae on behalf of Respondents.

GIBSON, C. J.—These are appeals from judgments for plaintiffs in 23 actions brought to recover taxes paid under protest on certain buildings. In five cases, the building involved was owned and occupied by a national bank which sought recovery for each of the tax years 1942 through 1946. In the remaining cases, the buildings were leased to and occupied by national banks but were owned by different landlords who sued separately for return of sums paid during the period 1941-1946 inclusive.

After receiving notice of assessments, plaintiffs applied to the county board of equalization for reductions in the assessed

valuations of their improvements in amounts equal to the value of bank vault doors and counterlines* installed in their buildings and included in the assessments. The applications were made upon the theory that substantially all property similar to bank vault doors and counterlines had been assessed as personal property, and that the assessment of bank vault doors and counterlines as improvements to realty was therefore discriminatory. The requested relief being denied by the board, plaintiffs paid the taxes under protest and instituted actions for recovery.

The record on these appeals consists of 38 volumes of the reporter's transcript, totaling over 8,500 pages, 14 books of exhibits comprising approximately 3,000 pages, and the clerk's transcripts of about 5,000 pages. Careful examination of this voluminous record, however, reveals that the essential facts are not in dispute, and they may be summarized briefly as follows:

For several years prior to 1940 the Los Angeles County Assessor, in preparing the assessment roll of the county, followed the general practice of classifying bank vault doors and counterlines as personal property. No ad valorem taxes were paid thereon since the personal property of national banks is exempt from local taxation. Following the decision of this court in *San Diego Trust & Savings Bank* v. *County of San Diego*, 16 Cal.2d 142 [105 P.2d 94, 133 A.L.R. 416], in 1940, however, the assessor reclassified and assessed vault doors and counterlines installed in buildings used for banking purposes as part of the building improvements or real estate, a practice which was again approved in 1946 by *Trabue Pittman Corp.* v. *County of Los Angeles*, 29 Cal.2d 385 [175 P.2d 512].

In each of the tax years involved in the present appeals, bank vault doors and counterlines installed in plaintiffs' buildings were classified as real property and, without being separately valued, were included with the buildings in assessments of improvements. During that period, however, as to property other than that occupied by banks, it was the assessor's general practice to classify and assess as *personal* property certain articles, machinery and equipment installed in buildings for purposes of trade, commercial or industrial uses. Typical of this practice was the treatment accorded to more than sixty items of property, including, among others, vault

*The word counterlines is used to denote combinations of counters, wickets, grilles, partitions, etc.

doors and counterlines of jewelers and furriers, refrigerators and counters in public markets, restaurant counters and booths, office partitions, printing presses of metropolitan newspapers, and a variety of heavy industrial machinery such as boilers, ovens and generators. The record contains photographs of all of these items showing their nature and the manner in which they were affixed to the realty. The vault doors and counterlines of jewelers and furriers were installed in the same manner and in a few instances in the same buildings as bank vault doors and counterlines. Other sizable articles were installed in buildings specially designed therefor, and still others were attached in a manner which either made their removal impossible without great damage to the building or otherwise suggested permanence. The specific items of property were classified as personalty, however, without regard to the manner of their attachment. Their classification as personalty was representative of the assessor's practice in connection with property of that kind and nature, although in some years vault doors in jewelry and fur stores were apparently classified as improvements.

The trial court found and concluded that in classifying and assessing banking fixtures as improvements, the assessor had intentionally, deliberately and without justification deviated from his general practice with regard to the classification and assessment of fixtures, and that such differences in treatment of similar property constituted discrimination against plaintiffs prohibited by various provisions of the federal and state Constitutions and by section 5219 of the Revised Statutes of the United States (12 U.S.C.A. § 548). It also determined that since bank vault doors and counterlines were included with each building in a single assessment of improvements, the invalid and otherwise valid portions of each assessment were indivisible and consequently all taxes levied thereon were void. Judgments were accordingly entered for plaintiffs, and these appeals followed.

### Sufficiency of Protests

At the outset, defendants contend that recovery in these cases is barred by Revenue and Taxation Code, section 5139, which provides that actions to recover taxes paid under protest may be brought only on the grounds specified in the protests. We are satisfied, however, that plaintiffs' complaint of an arbitrary difference in treatment of like property similarly situated, which is the basis of the present actions, is adequately set forth in the protests.

## Misclassification of Fixtures

■ It is settled that three tests must be applied "in determining whether or not an article is a fixture—namely: (1) the manner of its annexation; (2) its adaptability to the use and purpose for which the realty is used; and (3) the intention of the party making the annexation." (*San Diego T. & S. Bank* v. *San Diego County,* 16 Cal.2d 142, 149 [105 P.2d 94, 133 A.L.R. 416].) ■ It is also settled that for tax purposes the "intention" must be determined by the physical facts or reasonably manifested outward appearances without regard to the annexor's status as landlord or tenant. (*Trabue Pittman Corp.* v. *County of Los Angeles,* 29 Cal.2d 385 [175 P.2d 512]; *cf., San Diego T. & S. Bank* v. *San Diego County,* 16 Cal.2d 142 [105 P.2d 94, 133 A.L.R. 416]; *Southern Cal. Tel. Co.* v. *State Board of Equalization,* 12 Cal.2d 127 [82 P.2d 422].) ■ Under these tests, articles which were comparable to bank vault doors and counterlines and which were installed in buildings for purposes of trade or industry constituted fixtures and were misclassified as personal property pursuant to the assessor's general practice.

Defendants argue, however, that a distinction may be made between articles which are "integral parts" of a building or a "unit for use" therewith on the one hand and trade fixtures generally on the other, and that only property in the former category need be classified as improvements for tax purposes. The nature or basis of the asserted distinction is not clearly indicated, but we infer from the briefs that the argument has reference to articles installed in buildings of special design and construction or attached in a manner rendering their severance impossible without injury as contrasted with articles attached in a manner from which the conclusion of permanence is ordinarily not so compelling. (*Cf.,* Civ. Code, § 1019.) It is also urged that a reasonable classification of fixtures may be made as a matter of law on the basis of the nature of the business involved, the argument in this regard being that stability and permanence of location is present to a greater extent in the banking business than in manufacturing and industry generally.

■ In *Trabue Pittman Corp.* v. *County of Los Angeles,* 29 Cal.2d 385 [175 P.2d 512], the fact that the bank vault doors and counterlines were found to be fixtures or trade fixtures obviated the necessity for this court to discuss at length the criteria to be considered in determining whether an article is a fixture. The problem there presented concerned

the classification to be accorded "trade fixtures" for taxation purposes, and we held that such property was to be classified and assessed as realty. The opinion points out that the Revenue and Taxation Code declares real estate shall include "improvements" and defines improvements as including "fixtures," and that "No exception is made in the case of trade fixtures." It follows that the applicable statutes do not permit of the division of trade fixtures into classes or of the distinctions contended for by defendants, and on the contrary require all fixtures or trade fixtures to be taxed as improvements. Moreover, even if we were to assume that fixtures could be differentiated in the suggested manner, it is apparent that the considerations urged as the basis therefor do not account for the differences in the treatment of banking fixtures and other trade fixtures during the period here involved.

It is not necessary for plaintiffs to show actual fraud in actions of this nature. Assessments will be invalidated by the courts if the taxing authorities "resort to arbitrary methods varying from those employed in assessing other property of like character and situation, and resulting in the imposition designedly of an unequal burden on the property of the complainant." (*Hammond L. Co.* v. *County of Los Angeles,* 104 Cal.App. 235, 240 [285 P. 896]; *Southern Pac. Land Co.* v. *San Diego County,* 183 Cal. 543 [191 P. 931].) In the present cases the trial court found that both the assessor's general practice of classifying trade fixtures as personalty and his deviation therefrom in classifying banking fixtures as improvements were intentional and deliberate, that the deviation was not justified, and that the facts had been presented to the board of equalization which, with full knowledge thereof, denied applications for relief.

Defendants next contend that regardless of the misclassification of substantially all other fixtures as personalty, the trial court erred in concluding that the assessment of bank vault doors and counterlines as improvements constituted unlawful discrimination. They argue that taxes on banking fixtures were not increased and that other fixtures neither escaped taxation nor received more favorable tax treatment as a result of the misclassification. This contention necessitates separate consideration of the validity of the general county and city taxes on one hand and of the special assessment district charges on the other, since the general taxes were levied upon personal as well as real property while the special district taxes were levied only upon real property.

## *Validity of General County and City Taxes*

■ Defendants assert, and plaintiffs do not dispute, that during the years in question general taxes were levied at the same rate upon both real and personal property by the county and by various cities for which the county acted as agent in the collection of taxes. Where, as here, there is no claim or showing that real and personal property was assessed at a different proportion of value or that there was any difference in tax rate as between the two, no inequality of tax burdens would appear to result from the classification of bank vault doors and counterlines as realty and the concurrent classification of all similar property as personalty. (*Cf., California Domestic W. Co.* v. *Los Angeles County,* 10 Cal.App. 185 [101 P. 547]; *Ledoux* v. *La Bee,* 83 F. 761.) Nevertheless, plaintiffs assign several grounds of inequality or injury allegedly resulting from the misclassification of fixtures other than bank vault doors and counterlines.

■ It is argued first that if bank vault doors and counterlines had received the same classification accorded fixtures generally, they would have been exempt from taxation under section 5219 of the Revised Statutes of the United States and article XIII, section 16-1(a) of the California Constitution. The argument is fallacious. It does not show that plaintiffs were subjected to taxes not imposed on others of the same class or were otherwise prejudiced by the misclassification, but only that plaintiffs would have been benefited by a similar misclassification of their property. Discrimination cannot be thus postulated. (*Cf., Ambassador Hotel Corp.* v. *Los Angeles County,* 94 Cal.App. 143 [270 P. 726].) Classification of bank vault doors and counterlines as personalty would not have placed such property on a parity taxwise with similar property, but would have given the former an unwarranted exemption from taxation.

■ Plaintiffs' second argument is, in effect, that buildings owned by others were systematically undervalued as a result of the misclassification. They assert that inclusion of bank vault doors and counterlines in the assessments of their improvements enhanced the value of the buildings in which they were installed to an extent exceeding the actual value of those fixtures, and that such enhancement value was not considered in connection with other buildings because of the separate assessment of those buildings and the fixtures therein. The defect in this argument is that it rests entirely upon con-

jecture and surmise. There was no showing that the amounts included in the assessed valuations of plaintiffs' improvements on account of vault doors and counterlines exceeded the value of those fixtures when viewed as separate items of property. In fact, there was no evidence of the value that would have been placed on bank vault doors and counterlines if treated as personalty, or of the value that would have been placed on fixtures classified as personalty if they had been treated as improvements. It is conceivable that if the similar or compared property had been assessed as part of building improvements, the resultant single assessment might have been less than the total of the separate valuations placed on those fixtures and the buildings in which they were installed in view of the possible limited use of the buildings or the restricted marketability of the fixtures. (See *Trabue Pittman Corp.* v. *County of Los Angeles,* 29 Cal.2d 385, 401 [175 P.2d 512]; *Southern Cal. Tel. Co.* v. *State Board of Equalization,* 12 Cal.2d 127, 137 [82 P.2d 422].) Taxes, however, will not be invalidated on the basis of such a speculative charge of discrimination. (*Cf., Southern Cal. Tel. Co.* v. *Los Angeles County,* 45 Cal.App.2d 111 [113 P.2d 773].)

Plaintiff bank points out that the tax rate on banks under section 4a of the Bank and Corporation Franchise Tax Act (3 Deering's Gen. Laws, Act 8488) is computed in part by reference to the amount of local personal property taxes paid by nonbanking corporations, and claims that misclassification of the fixtures of such corporations increased the bank tax rate. The trial court, however, expressly refused to find that the misclassification increased the bank's tax under section 4a "because of the lack of sufficient evidence to determine the effect of such practice or the amount of such increase, if any." Moreover, the taxes claimed to have been improperly increased were state taxes, and county or city levies cannot be shown to be discriminatory by proof of injury resulting from the act of a different and independent taxing authority. Recovery of local taxes on the theory of discrimination by defendants could be had in these actions only on proof of the comparative tax burdens imposed by defendants on plaintiffs' property and like property of others similarly situated. (*Southern Cal. Tel. Co.* v. *Los Angeles County,* 45 Cal.App.2d 111 [113 P.2d 773].)

Plaintiff lessors also complain that their taxes were increased by amounts attributable to the value of their tenants' fixtures whereas other landlords were not similarly burdened

because of the misclassification of fixtures generally. The argument overlooks the fact that the taxes were levied upon the property itself and imposed no personal liability on plaintiffs. (*Trabue Pittman Corp.* v. *County of Los Angeles,* 29 Cal.2d 385, 402 [175 P.2d 512]; *Klumpke* v. *Baker,* 131 Cal. 80, 82 [63 P. 137, 676].) The complaint is not concerned with the comparative tax on the various properties, but solely with the question of whether the taxes will be paid by the landlord or his tenant. As pointed out in the Trabue Pittman case, a building owner may by contract protect himself against increases in taxes that result from improvements to the building by tenants, and plaintiffs in the present cases may have been so protected.

In addition to the foregoing arguments plaintiffs complain of the differences in classification without regard to the tax consequences thereof and contend that discrimination can be shown by mere differences in classification as between similar property. No authority is cited in support of this contention, and we are of the view that mere differences in the classification of like property without attendant inequality of tax burdens do not violate the equal protection clause of the Fourteenth Amendment. (See *Hillsborough Township* v. *Cromwell,* 326 U.S. 620 [66 S.Ct. 445, 90 L.Ed. 358]; *Concordia Fire Ins. Co.* v. *Illinois,* 292 U.S. 535 [54 S.Ct. 830, 78 L.Ed. 1411]; *Snowden* v. *Hughes,* 321 U.S. 1, 9 [64 S.Ct. 397, 88 L.Ed. 497, 503]; *Sunday Lake Iron Co.* v. *Wakefield Twp.,* 247 U.S. 350, 353 [38 S.Ct. 495, 62 L.Ed. 1154, 1156].)

What has already been said largely disposes of the further contention that assessment of bank vault doors and counterlines as improvements under the circumstances in the present cases violated the provision in article I, section 11, of the California Constitution which requires that all laws of a general nature shall have a uniform operation. Plaintiffs concede that in tax matters the requirements of this section are substantially the same as those of the equal protection clause of the Fourteenth Amendment. The statement in *Trabue Pittman Corp* v. *County of Los Angeles,* 29 Cal.2d 385, 392 [175 P.2d 512], that "There can be uniformity of taxation only to the extent that there is a uniform classification of real and personal property," is not authority for the proposition that unjustified differences in classification are interdicted by the California Constitution when there is no resulting inequality of tax burdens. The quoted statement was made in response to the argument that a distinction should be made for tax

purposes between fixtures installed by tenants and those installed by the owner of real property, and it does not mean that lack of uniformity in classification of itself constitutes or necessarily results in prohibited discrimination. The opinion clearly recognizes that " 'It is the purpose of uniformity of taxation that all property in the state carry its fair burden. . . .' " and that "to hold the doctrine of trade fixtures operative in a tax matter merely because property is claimed under two ownerships instead of one would be to discriminate in favor of one owner and against another owner of similar property, not only because of a possibility of a differential between the real and personal property tax rates for a given year, but also because many special assessment districts impose burdens on real property but not personal property." (P. 398.)

There is nothing in the language of section 5219 of the Revised Statutes of the United States (12 U.S.C.A. § 548) which supports plaintiffs' contention that unjustified differences in the classification of property without accompanying disparity in tax consequences result in exceeding the authority to tax the real property of national banks "to the same extent, according to its value, as other real property is taxed." No cases so holding have been called to our attention, and the rule is apparently to the contrary. (*Tradesmens Nat. Bank* v. *Oklahoma Tax Com.,* 309 U.S. 560 [60 S.Ct. 688, 84 L.Ed. 947]; *New York ex rel. Amoskeag Sav. Bank* v. *Purdy,* 231 U.S. 373 [34 S.Ct. 114, 58 L.Ed. 274].)

Finally, plaintiffs contend in support of the judgments that the taxation of bank vault doors and counterlines constituted prohibited double taxation. They argue that the "discriminatory" classification of banking fixtures as improvements resulted in imposition of local taxes upon property which is "presumed" to have been taxed by the state under article XIII, section 16-1.(a), of the Constitution and section 4a of the Bank and Corporation Franchise Tax Act (3 Deering's Gen. Laws, Act 8488). Section 16-1.(a) provides for a state tax on banks measured by their net income "in lieu" of all other taxes on such banks, "except taxes upon their real property." As previously noted, under section 4a, the state tax rate is computed according to a formula which takes into account the personal property taxes paid by nonbanking corporations. The only conceivable basis for presuming that a substituted state tax was paid on bank vault doors and counterlines is the assertion that the misclassification of other

fixtures increased the rate under section 4a, an assertion which, we have observed, did not find support in the evidence.

We conclude that with regard to the general county and city taxes the misclassification of fixtures other than bank vault doors and counterlines did not result in the imposition of discriminatory tax burdens upon plaintiffs, and that under such circumstances the misclassification was a mere informality or irregularity which did not affect the validity of the general taxes levied upon the correctly classified fixtures installed in plaintiffs' buildings.

### Invalidity of Special Assessment District Charges

The situation is different as to the special assessment district charges, and it is clear that plaintiffs were subjected to discriminatory tax burdens by reason of the misclassification of fixtures generally. The special district taxes were levied only upon realty, and, while payments were made on bank vault doors and counterlines properly classified as improvements, other similar property was completely relieved of the burden of those charges by being classified as personalty. It follows that the special district taxes were invalid to the extent that they represented a levy upon fixtures installed in plaintiffs' buildings.

There remains for consideration the nature and extent of the relief to which plaintiffs are entitled by reason of the invalidity of the special district taxes paid upon the vault doors and counterlines. Plaintiffs contend that since a substantial but uncertain amount on account of vault doors and counterlines was included with each building in a single assessment of improvements, the valid and invalid portions of the special district taxes levied thereon are incapable of separation, and that they are consequently entitled to recover the full amount of the tax. Defendants, on the other hand, contend that the alleged indivisibility of the assessments resulted from plaintiffs' failure to prove the value of the component parts of the property assessed, and that plaintiffs therefore are precluded from recovering any amount. In our opinion, neither contention states the proper rule to be followed in cases of this nature. Plaintiffs' contention would require defendants to refund the valid portion of the special district taxes attributable to the value of plaintiffs' buildings, and to pay interest thereon, which would be contrary to the policy that the public should not be deprived of revenue necessary for the performance of governmental functions. Defendants' contention is based upon

the assumption that the courts will perform valuation or equalization functions which are vested exclusively in the local board of equalization.

█ Actions to recover taxes paid under protest are equitable in nature. (*Steele* v. *San Luis Obispo County,* 152 Cal. 785 [93 P. 1020]; *H. & W. Pierce, Inc.* v. *Santa Barbara County,* 40 Cal.App. 302 [180 P. 641].) █ It is the established rule, based on the maxim that he who seeks equity must do equity, that a property owner seeking to challenge the validity of a tax must pay or offer to pay the portion of the tax to which the taxing authority is entitled in equity and good conscience. This rule is applicable in actions to recover taxes erroneously collected or paid under protest. (*Otis* v. *Los Angeles County,* 9 Cal.2d 366 [70 P.2d 633]; *Third & Broadway Bldg. Co.* v. *Los Angeles County,* 220 Cal. 660 [32 P.2d 377]; *First Trust etc. Bk.* v. *Los Angeles County,* 206 Cal. 240 [273 P. 1066]; *Steele* v. *San Luis Obispo County, supra*; *Mackay* v. *San Francisco,* 113 Cal. 392 [45 P. 696]; *De Fremery* v. *Austin,* 53 Cal. 380; *Bank of Mendocino* v. *Chalfant,* 51 Cal. 369; *Bandini Estate Co.* v. *Los Angeles County,* 28 Cal.App.2d 224 [82 P.2d 185]; *DeMille* v. *County of Los Angeles,* 25 Cal.App.2d 506 [77 P.2d 905]; *Associated Oil Co.* v. *County of Orange,* 4 Cal.App.2d 5 [40 P.2d 887]; *H. & W. Pierce, Inc.* v. *Santa Barbara County, supra.*) It also applies in proceedings to enjoin the collection or otherwise restrain enforcement of taxes (*Universal Cons. Oil Co.* v. *Byram,* 25 Cal.2d 353 [153 P.2d 746]; *County of Los Angeles* v. *Ballerino,* 99 Cal. 593 [32 P. 581, 34 P. 329]; *Esterbrook* v. *O'Brien,* 98 Cal. 671 [33 P. 765]; *County of Los Angeles* v. *Ransohoff,* 24 Cal.App.2d 238 [74 P.2d 828]; *Merchants Trust Co.* v. *Hopkins,* 103 Cal.App. 473 [284 P. 1072]). In the first mentioned class of cases, the rule operates to limit recovery to the difference between the tax actually paid and that which properly should have been exacted, and to prevent recovery if the taxpayer paid only his fair and just proportion of taxes. The rule has been applied where the invalidity of the tax resulted, or was alleged to have resulted, from fraudulent overvaluation of a single item of property (*Universal Cons. Oil Co.* v. *Byram,* 25 Cal.2d 353 [153 P.2d 746]; *Mackay* v. *San Francisco,* 113 Cal. 392 [45 P. 696]; *County of Los Angeles* v. *Ballerino,* 99 Cal. 593 [32 P. 581, 34 P. 329]; *Bandini Estate Co.* v. *County of Los Angeles,* 28 Cal.App.2d 224 [82 P.2d 185]; *DeMille* v. *County of Los Angeles,* 25 Cal. App.2d 506 [77 P.2d 905]; *cf., County of Los Angeles* v.

*Ransohoff,* 24 Cal.App.2d 238 [74 P.2d 828]), from application of an improper tax rate (*Otis* v. *Los Angeles County,* 9 Cal.2d 366 [70 P.2d 633]), from technical defects in procedure (*Steele* v. *San Luis Obispo County,* 152 Cal. 785 [93 P. 1020]; *Esterbrook* v. *O'Brien,* 98 Cal. 671 [33 P. 765]; *cf., First Trust etc. Bk.* v. *Los Angeles County,* 206 Cal. 240 [273 P. 1066]), and from inclusion in a single assessment of taxable and nontaxable property (*Third & Broadway Bldg. Co.* v. *Los Angeles County,* 220 Cal. 660 [32 P.2d 377]; *De Fremery* v. *Austin,* 53 Cal. 380; *Bank of Mendocino* v. *Chalfant,* 51 Cal. 369; *cf., Associated Oil Co.* v. *County of Orange,* 4 Cal.App.2d 5 [40 P.2d 887]).

Under the authorities cited above, defendants should be permitted to retain the portion of the special district taxes allocable to the value of plaintiffs' improvements minus the value of the bank vault doors and counterlines, and plaintiffs' recovery should accordingly be limited to an amount representing the tax on the latter items. Plaintiffs argue, however, that the established rule, which they style the "equitable offset" doctrine, is inapplicable where, as here, the included fixtures were not separately valued, citing *San Pedro etc. R. R. Co.* v. *Los Angeles,* 180 Cal. 18 [179 P. 393]. They further argue that the rule was repudiated by this court in *Universal Cons. Oil Co.* v. *Byram,* 25 Cal.2d 353 [153 P.2d 746]. Neither argument finds support in the cases.

In the San Pedro case, the entire tax was ordered refunded where a breakwater had been included in a single assessment of improvements with a "fill" which admittedly was not an improvement. There, however, the defendant had conceded on appeal that "'the judgment should be sustained insofar as the assessment upon improvements is concerned.'" (180 Cal. at p. 27.) For that reason, as stated in *Esterbrook* v. *O'Brien,* 98 Cal. 671, 674 [33 P. 765], "no question was made as to the proper remedy." On the other hand, in *Third & Broadway Bldg. Co.* v. *Los Angeles County,* 220 Cal. 660 [32 P.2d 377], where recovery was sought of taxes paid to the county on a building occupied in part by a public utility whose operative property was not subject to local taxation, this court affirmed a judgment for plaintiff based upon an apportionment of the tax between that part of the building operatively used by the utility and the balance of the structure. In this connection, it might also be noted that while cases of fraudulent overvaluation involve a single "indivisible" assessment,

recovery therein is limited to the inequitable portion of the tax. (*Universal Cons. Oil Co.* v. *Byram*, 25 Cal.2d 353 [153 P.2d 746]; *Bandini Estate Co.* v. *Los Angeles County*, 28 Cal.App.2d 224 [82 P.2d 185]; *cf.*, *Mackay* v. *San Francisco*, 113 Cal. 392 [45 P. 696]; *DeMille* v. *County of Los Angeles*, 25 Cal.App.2d 506 [77 P.2d 905].)

*Universal Cons. Oil Co.* v. *Byram*, 25 Cal.2d 353 [153 P.2d 746], did not alter the rule that one who invokes the aid of equity to recover or defend against an invalid tax must pay the amount of the tax morally and justly due. It did, however, prescribe the procedure to be followed in determining the amount of recovery or payment where, as in the present cases, such determination is dependent upon an exercise of valuation functions and does not involve mere mathematical computations. That was a case in which plaintiffs sought to enjoin the collection of taxes on the ground of excessive valuations after their applications for reductions of assessments had been denied by the county board of equalization. Plaintiffs deposited with the court an amount equal to their tax liability on the challenged assessments as a condition to the requested relief. The trial court, having found in plaintiffs' favor on all material issues, made reductions in the valuations, computed taxes thereon at the stipulated rate, and ordered payment to defendant of the amount thus determined to be due as well as the return to plaintiffs of the balance of the deposited funds. On appeal, this court held that considerations of due process justified avoidance of the board of equalization's rulings but concluded that the trial court should have remanded the cases to the board for further consideration and action. It so directed the trial court, and ordered it to retain the funds on deposit pending determination of equalization matters by the board, following which the funds were to be disbursed accordingly. Upon analogous reasoning, when in the present cases the trial court concluded that with respect to the special assessment district charges the taxing authorities discriminated against plaintiffs by singling out banking fixtures for assessment as improvements and thereby subjecting them to special district taxes which were not levied upon like property of others similarly situated, it should have ordered the cases resubmitted to the board of equalization for determination of the value of plaintiffs' buildings without the included fixtures, retaining jurisdiction of the parties and subject matter until the appropriate judgment could finally be rendered in conformity with the terms of the board's rulings.

*Costs*

Finally, defendants complain of the trial court's action in allowing certain items as costs to plaintiffs over defendants' objections. The disputed items consisted of transcripts of the hearings before the board of equalization and various photographs, all of which were introduced as exhibits at the trial. The charges for the transcripts appear on their face to be proper and necessary. (*Cf., Whitaker* v. *Moran,* 23 Cal.App. 758 [139 P. 901]; Code Civ. Proc., § 1094.5.) The photographs, however, were apparently obtained at the sole instance of plaintiffs for the purpose of showing the alleged discriminatory assessment practices, and, in our opinion, the expense thereof is not a proper item of costs. (*Moss* v. *Underwriters' Report, Inc.,* 12 Cal.2d 266 [83 P.2d 503]; *Crabtree* v. *Houghton,* 191 Cal. 33 [214 P. 846]; *Bathgate* v. *Irvine,* 126 Cal. 135 [58 P. 442, 77 Am.St.Rep. 158]; *Miller* v. *Highland, etc. Co.,* 91 Cal. 103 [27 P. 536].)

The judgments are reversed with directions to the trial court to proceed in accordance with the views expressed herein.

Shenk, J., Edmonds, J., Carter, J., Schauer, J., Spence, J., and Vallée, J. pro tem., concurred.

Respondents' petition for a rehearing was denied June 1, 1950. Vallée, J. pro tem., participated in place of Traynor, J.