[No. 12342. In Bank. — April 29, 1889.]

## J. L. HUTSON, RESPONDENT, *v.* WOODBRIDGE PROTECTION DISTRICT No. 1 ET AL., APPELLANTS.

CONSTITUTIONAL LAW — DUE PROCESS OF LAW — ASSESSSMENT TO PROTECT LANDS FROM OVERFLOW. — The act of April 15, 1880, "to provide for the protection of lands from overflow, other than lands recognized as swamp lands," is unconstitutional in so far as it provides for making assessments therefor a charge upon the lands benefited, and for sale of the assessed lands to pay such assessments, for the reason that the act provides no opportunity for a hearing of the land-owner in regard to the assessment, but makes the assessment an absolute lien upon the property, and provides for a summary sale thereof to pay the assessment, without any suit or opportunity of defense to the land-owner, and so would deprive him of his property without due process of law.

APPEAL from a judgment of the Superior Court of San Joaquin County, and from an order denying a new trial.

The action was brought to annul a certificate of sale issued by the tax collector of San Joaquin County to Amos Boyce, of lands of plaintiff in San Joaquin County, in collection of assessments levied against said lands for the protection of lands from overflow in Woodbridge Protection District No. 1; to enjoin said tax collector from executing any deed founded on said certificate of sale for the lands so sold; and for quieting the title of plaintiff to said lands, and for general relief. Woodbridge

Protection District No. 1 was organized as a protection district under and pursuant to the provisions of the act of April 15, 1880, entitled "An act to provide for the protection of lands from overflow, other than lands recognized as swamp lands"; and trustees of said district were elected, who organized as the board of trustees of said district in the year 1881.   The assessment complained of was made by the acting trustees of the district November 17, 1885.   The assessment was styled "Assessment No. 2," and was levied at the rate of thirty cents per acre. The tax collector sold the land of plaintiff under this assessment in March, 1887.   Some questions were raised and discussed by counsel in regard to the regularity of the proceedings; but the main point in controversy related to the constitutionality of the act under which the sale took place.   The further facts are stated in the opinion of Mr. Justice Thornton in Department Two.

*J. H. Budd,* and *Dunlap & Vischer,* for Appellant.

*J. B. Hall,* for Respondent.

The law is unconstitutional, because not providing for notice and an opportunity to the land-owner to be heard. (*Stuart* v. *Palmer,* 74 N. Y. 108; 30 Am. Rep. 289; *Mulligan* v. *Smith,* 59 Cal. 230; *Boorman* v. *Santa Barbara,* 65 Cal. 313; *Butler* v. *Supervisors of Sagenaw,* 24 Mich. 22; *Davidson* v. *New Orleans,* 96 U. S. 97; *Hagar* v. *Reclamation District,* 111 U. S. 701; *Cruger* v. *Hudson River R. R. Co.,* 12 N. Y. 190; *Remsen* v. *Wheeler,* 105 N. Y. 573.)

The COURT.—The judgment and order appealed from are affirmed, for the reasons stated in the opinion of Department Two, which opinion is approved and adopted as the opinion of the court in Bank.

The following is the opinion of Department Two above referred to, rendered on the 14th of February, 1888:—

THORNTON, J.—This action involves the constitutionality of certain provisions of the act of April 15, 1880,

entitled "An act to provide for the protection of lands from overflow, other than lands recognized as swamp lands." (See Stats. 1880, p. 55.)

The work to be done under the act for protecting land from overflow is to be paid for by assessments on the lands included within a certain district to be constituted in the mode provided for in the first, second, and third sections of the act.

Three trustees of the district are to be elected, who are to be notified of their election. (See sec. 3.)

The act further provides that within twenty days after the trustees are notified of their election, they shall meet and organize as a board, by the election from their number of a chairman and secretary, and enter upon the discharge of their duties. This board is to have charge of all the works of protection, and shall superintend the construction or repair of the same, and shall have power to do all other acts necessary for the accomplishment of the objects for which the district was organized. The board is empowered to employ competent engineers, and is required to proceed to survey, mark out, and locate the necessary work of protection for the district, to provide plans and specifications for the same, and estimates of the cost of construction, and submit the same to the board of supervisors by whom the district was formed, for their approval, modification, or rejection. (See sec. 4.)

The fifth and sixth sections are as follows:—

"Sec. 5. Upon the adoption of a plan of protection, said board of supervisors shall appoint three disinterested persons, residing in any county in which some part of the district is situated, as commissioners, who shall, on being notified in writing of their appointment by the clerk of the board of supervisors, proceed to view each forty-acre tract or fraction thereof, and each town lot or parcel of land within the district, and levy and fix against each such sum for protection purposes in propor-

tion to the whole expense, and to the benefits to be derived from such proposed works of protection, in gold coin of the United States, and report to said board of supervisors as follows:—

"1. A description by the smallest legal subdivisions or natural boundaries of each tract, and number and block of each town lot in the district.

"2. The number of acres in each tract or parcel of land, and the size of each town lot.

"3. The names of the owners of each tract or lot, if known; and if not, as unknown.

"4. The sum levied or fixed against each tract, parcel of land, or town lot.

"Said commissioners shall be entitled to receive a sum not to exceed five dollars per day each while performing said duties, to be paid out of the proper protection fund.

"Sec. 6. Upon the filing of the report of the commissioners, as aforesaid, with the clerk of the board of supervisors, said board shall give notice in some newspaper printed in the county that they will, upon a day named in such notice, which day shall not be less than five days from the date of publication, meet, and review, correct, and adopt said report; and upon the day thus fixed, the board of supervisors shall meet, review, correct, and adopt said report; and their decisions in the premises shall be final. The sums thus fixed against each tract, parcel of land, or town lot, in said report as adopted, shall be the basis of all assessments within the district for a term of ten years thereafter, unless legally changed as hereinafter provided. The words 'tract or parcel of land' shall include all railroad beds within the district."

It will be observed that the action of the commissioners under the fifth, and the board of supervisors under the sixth, sections is to prepare, not an assessment, but the basis of an assessment, which basis may continue as such for the term of ten years.

The levy of the assessments is to be made under the seventh section by the board of trustees of the district.

The section just mentioned is as follows:—

"Sec. 7. The board of trustees of any protection district formed under this act shall have power to levy assessments on or against each tract or parcel of land or town lot in the approved report of the commissioners for such district. On making such assessment, said trustees shall make a list of the sums assessed against each tract or parcel of land or town lot in the district, and file the same with the county treasurer of the county in which the district was organized; and from and after the filing thereof, the charges against any tract or parcel of land or town lot contained therein shall become a lien thereon; *provided*, that if any such land be situated in different counties, the trustees shall cause the same to be filed in each county where the land is situated."

The list of assessments thus levied by the board of trustees under section 8, when prepared and filed with the county treasurer, is to remain in the office of the treasurer for thirty days, or longer, if so ordered by the board of trustees, and during this period any person may pay the charges so assessed to the officer last named.

When the list is filed in the office of the treasurer, he is to give notice, by publication in a newspaper printed in the county, that the assessment has been filed in his office, with the date of the filing; that the amounts entered thereon are due and payable, and that if not paid on or before the first Monday of January next ensuing, the same will become delinquent, and will be turned over to the tax collector for collection. The treasurer is to note on the lists all assessments paid, and shall, on the day above named, turn said list over to the tax collector of the county, who shall proceed to collect the assessments which are delinquent, and may collect by sale of the assessed lands.

It is argued that the owner of the land assessed has no

opportunity under the act to be heard in regard to the assessment, and that on non-payment his land will be sold without any opportunity to be heard as to this charge, which is declared to be a lien on his land, and that he will thus be deprived of his property without due process of law.

We think the point well taken. No provision is made anywhere in the statute for any hearing by the landowner whose land is to be charged. No notice is to be given him when the board of trustees is to levy the assessment, and if he appears when such assessment is to be levied by the board of trustees, no hearing by the board is provided for in the act. The collection provided for is summary, and without suit brought at which the property owner can be heard. The assessment is by the terms of the act made an absolute lien on his property, without any provision or opportunity allowed him to show its illegality or unconstitutionality.

For these reasons, we are of opinion, according to well-settled rules, that the act is unconstitutional, and the assessment and sale under it cannot be valid.

The judgment and order must be affirmed.

So ordered.

MCFARLAND, J., and SHARPSTEIN, J., concurred.