[Civ. No. 6036. Third Appellate District.—August 23, 1938.]

BANDINI ESTATE COMPANY (a Corporation), Appellant, v. COUNTY OF LOS ANGELES (a Body Corporate and Politic), Respondent.

Holbrook, Taylor, Tarr & Reed, Holbrook & Tarr and Sumner Holbrook, Jr., for Appellant.

Everett W. Mattoon, County Counsel, J. H. O'Connor, County Counsel, and Gordon Boller, Deputy County Counsel, for Respondent.

PULLEN, P. J.—This is an action to recover taxes paid by appellant Bandini Estate Company, a corporation, upon twenty-four parcels of real property in the County of Los Angeles.

On the first Monday in March, 1931, and for several years prior thereto this property had belonged to the Laguna Maywood Land Corporation. In July, 1931, the Laguna Maywood Land Corporation filed with the Los Angeles County board of supervisors, sitting as a county board of equalization, an application for reduction of the assessment on said real property.

In its behalf the Land Corporation employed a tax agent, Charles Husband, to present its demands. Husband filed the application with the board of supervisors, sitting as a board of equalization and requested that a hearing thereon be had before a majority of the board instead of only one

as had been the custom. This request was refused, and after a hearing before a single member of the board, the request for a reduction was denied.

In September, 1931, and before the payment of the taxes, this property was purchased by appellant herein, Bandini Estate Company. This Company then paid the taxes thereon and filed a claim with the board of supervisors for a refund. This was denied by the board, and this action for refund of a portion thereof was then commenced, being for an amount estimated by appellant fairly to represent the amount of the tax upon so much of the valuation as exceeded the lower valuation requested in the application to the board of equalization.

The evidence introduced upon the trial of this action was the application to the board of equalization, the reporter's transcript and other evidence of the testimony, and certain exhibits introduced upon the hearing before supervisor Wright. In addition, further evidence was introduced over the objection of respondent as to the assessor's method of assessment of the property and as to the relative value of appellant's and adjacent property. Judgment was entered against Bandini Estate Company, from which judgment this appeal is taken.

Since this was an action brought to secure a refund of taxes allegedly illegally collected from appellant (Pol. Code, sec. 3804), the gist of the action was the illegality of such collections.

The principal objection urged by appellant Bandini Estate Company is that the assessment was illegal and erroneous on the following grounds: First, the refusal of the board of equalization to conduct a hearing by a full board or by a majority of the members of a full board; secondly, that the only testimony taken by the board made out a *prima facie* case for equalization and reduction, in accordance with the application, and, thirdly, the action of the board in disregarding all competent evidence constituted an arbitrary act, an abuse of discretion and a constructive fraud on plaintiff, voiding the assessment, and finally, that the sole members of the board of supervisors, sitting as a board of equalization, heard testimony or listened to argument out of the presence of the petitioner, without opportunity of cross-examination

by petitioner, thereby rendering its determination void, and the assessment illegal.

It was the contention of appellant that its property had been overvalued by the assessor in the year 1931, and in accordance with law it made an application to the board of supervisors, constituting the board of equalization, to determine the value of the property and to equalize the assessment. Some question is raised by respondent that the grounds stated in the petition were inadequate, merely specifying "excessive valuation". We believe, however, that no one was misled by the brevity of the allegation as the hearing took a wide scope and it was understood by all concerned to set forth the taxpayer's claim of discrimination as compared with similarly situated lands.

It was held in *County of Los Angeles* v. *Ransohoff,* 24 Cal. App. (2d) 238 [74 Pac. (2d) 828], that section 3674 of the Political Code does not prescribe any special form of application the taxpayer must file with the board of equalization in order to obtain an adjustment of the assessment of its property, nor need the allegations in such an application follow any technical rule of pleading, it only being necessary that the board may learn from the application what the claim of the applicant is, to the end that such claims may be investigated by the assessing authorities prior to the hearing. In the Ransohoff case, *supra,* the ground upon which such charge was based was given as "unequal value" whereas in the instant case the grounds given were "excessive valuation". In view of the fact that the application was presented upon forms prescribed by the county and that no objection was made to the insufficiency of the allegation either at the time of filing or during the hearing, and in accordance with the holding in the Ransohoff case, *supra,* the allegation must be considered adequate.

Tax proceedings are made up primarily of four steps: First, the assessment; second, equalization; third, the computation of tax rate; fourth, collection procedure. It requires the citation of no authority to establish the principle that tax proceedings are *in invitum* and are necessarily strictly construed in favor of the taxpayer.

The equalization stages of a tax proceeding are no exception to this rule. In *Birch* v. *Board of Supervisors,* 191 Cal. 235 [215 Pac. 903], an appeal was taken from a judgment

in favor of plaintiff in a proceeding to review the action of the board of supervisors raising the assessment upon plaintiff's property on the assessment roll, after a hearing upon plaintiff's application for a reduction. The board contended that inasmuch as all the parties concerned were before the board it had jurisdiction to make the order. The difficulty with this argument, the court said, "is that the power of the board of supervisors is purely statutory and that the proceedings are *in invitum,* and that the board must act in the manner prescribed by statute, otherwise their action is void", and that the taxpayer had a constitutional right to a hearing upon the valuation as fixed by the taxing power.

The law does not contemplate that the valuations of property be left to the discretion of a sole appraiser. Reference to our tax statutes reveals that before a tax valuation can become the basis of any further step in the proceedings, it must pass the scrutiny not of the assessor but of a board of equalization. In *Hutson* v. *Protection District,* 79 Cal. 90 [16 Pac. 549, 21 Pac. 435], the court had before it the constitutionality of taxes levied by a swamp land district. In holding that the taxes levied were void, because of the lack of any hearing on the part of the taxpayer before the imposition of the tax, the court said:

"No provision is made anywhere in the statute for any hearing by the landowner whose land is to be charged. No notice is to be given him when the board of trustees is to levy the assessment, and if he appears when such assessment is to be levied by the board of trustees, no hearing by the board is provided for in the act. The collection provided for is summary, and without suit brought at which the property owner can be heard. The assessment is by the terms of the act made an absolute lien on his property, without any provision or opportunity allowed him to show its illegality or unconstitutionality."

Turning our attention to the proceedings had before the so-called board of equalization we find that article XIII, section 1, of our Constitution provides: "All property in the state except as otherwise in this Constitution provided, not exempt under the laws of the United States, shall be taxed in proportion to its value." In accordance therewith article XIII, section 9, of the Constitution, providing for the mode of equalization, specifies: "The boards of supervisors

of the several counties of the state shall constitute boards of equalization for their respective counties, whose duty it shall be to equalize the valuation of the taxable property in the county for the purpose of taxation; provided, such state and county boards of equalization are hereby authorized and empowered, under such rules of notice as the county boards may subscribe as to county assessments, . . . to increase or lower the entire assessment roll, or any assessment contained therein, so as to equalize the assessment of the property contained in said assessment roll, and make the assessment conform to the true value in money of the property contained in said roll; . . .''

Reference to Political Code sections 3672 and 3682, inclusive, disclose that the board of supervisors of each county must meet upon a day fixed to examine the assessment book and equalize the assessment of property in the county. Glancing at these sections we find reference in each instance was made to the ''Board''; that the ''Board'' was required to examine on oath; subpoena witnesses; direct the assessor to assess taxable property and deliver the assessment books so corrected to the county auditor. No delegation of any authority can be found therein to a single member of such board to carry out any of the powers therein granted. In the instant case, over the objection of appellant, one member of the board of supervisors constituted himself a board of equalization.

In the recent case of *Morgan* v. *United States,* 304 U. S. 1 [58 Sup. Ct. 773, 82 L. Ed. 1129], the Supreme Court of the United States, speaking through the Chief Justice, laid down the requirements of due process as applied to proceedings before a *quasi*-judicial tribunal. What is there said may very aptly be applied to the situation here. In accordance with the principles there laid down it would clearly appear that appellant in order to receive the benefits of due process was entitled to a hearing of a majority of the board of equalization.

Due process also requires that the tribunal conducting the hearing be constituted in accordance with statutory requirement. (*Ex parte Giambonini,* 117 Cal. 573 [49 Pac. 732].) The same rule of due process as to a properly constituted tribunal is as applicable to a *quasi*-judicial board as to a court. In *Taboada* v. *Sociedad Espanola, etc.,* 191 Cal. 187

[215 Pac. 673, 27 A. L. R. 1508], the court said: "This rule is not confined alone to courts of justice and strictly legal tribunals, but is applicable to every tribunal which has the power and authority to adjudicate questions involving legal consequences." Due process, therefore, would require that the board of equalization be constituted in accordance with the statutory mode.

These constitutional and statutory provisions providing for a board of equalization require such board to be composed of at least a majority of the five members of the board of supervisors and not simply of a single member. There seems to be no dispute that Mr. Wright alone conducted the Bandini hearing, and that three or four other supervisors were conducting individual hearings on other applications in other parts of the room at the same time that supervisor Wright was hearing the testimony on appellant's application.

There is no question that composition of the board of equalization being a matter of statute and jurisdictional, it cannot be waived by the taxpayer, although in this case specific objection was noted by the taxpayer to the matter being heard by a single member of the board.

It is unnecessary to cite the many cases in California which have followed the rule enumerated in *Hutson* v. *Protection District, supra.* Neither need we more than cite a few of the federal cases that hold that unless the tax statute provides an opportunity for a hearing of the taxpayer at some stage of the proceedings before the tax becomes fixed it is void under the Fourteenth Amendment. To this effect is *County of Santa Clara* v. *Southern Pac. R. Co.,* 18 Fed. 385; *Londoner* v. *City & County of Denver,* 210 U. S. 373 [28 Sup. Ct. 708, 52 L. Ed. 1103]; *Turner* v. *Wade,* 254 U. S. 64 [41 Sup. Ct. 27, 65 L. Ed. 134]; *Morgan* v. *United States, supra,* as well as the many authorities cited in these cases.

We believe the foregoing establishes that the Land Corporation was denied a hearing by a legally constituted tribunal in that one member of the board attempted to act as a board of equalization, and for that reason the Land Corporation was denied its legal rights.

It is also claimed by appellant that conceding the hearing was not illegal, that nevertheless such proceedings were not conducted in accordance with the requirements of

an orderly and impartial hearing for the reason that certain testimony or statements of the assessor were taken out of the presence and without the knowledge of the taxpayer, and also that the decision rendered by the examiner was not in accordance with the indisputable evidence taken at the hearing.

In support of the claim that evidence was taken out of the presence of the taxpayer it appears that subsequent to the formal hearing and out of his presence, a note was made upon the application for equalization, reading, "Recommend no reduction. This property was very carefully checked and values very reasonable as they are", and signed by two members of the assessor's staff. It was error to receive and consider this evidence. (*Carstens* v. *Pillsbury,* 172 Cal. 572 [158 Pac. 218].)

As to the conclusion that the finding of the board was not in accord with the evidence taken, appellant points out that from the reporter's transcript of the hearing before the board of equalization it is shown that only two witnesses were examined by Mr. Wright, the first, Mr. Husband, the tax agent, and the other an officer of the corporation. Their testimony was to the effect the properties were over assessed in comparison with immediately adjoining and adjacent properties of the same type and character. Certain maps and airplane photographs were introduced in support of this testimony. No attempt was made to explain the alleged discrepancies. It is therefore contended the board had nothing before it upon which to base a finding contrary to appellant, except the *ex parte* notation written on the application after the hearing.

If we are correct in holding that the entire tax proceeding was void, the county had an opportunity to have corrected the situation by beginning a new tax proceeding. (Pol. Code, sec. 3681a.) This was not done. However, a taxpayer may not defend against a tax on the ground it was fraudulently and corruptly based on an exorbitant valuation without alleging that the defendant has paid or offered to pay what would have been right upon what he concedes would have been a fair valuation of his property or offering to pay what the court should ascertain to be fair. (*County of Los Angeles* v. *Ballerino,* 99 Cal. 593 [32 Pac. 581, 34 Pac. 329].) This the appellant did in its answer but the county failed to

establish and the court failed to find what was a fair valuation of the several parcels of land in question. It was stipulated that it was the general method of assessment in Los Angeles County in 1931 to assess parcels of land at not to exceed 50 per cent of their market value. The tax rate for 1931 was also stipulated to as regards each of the respective parcels here involved.

It is therefore ordered that the judgment appealed from be reversed, and the cause remanded to the trial court to ascertain the proper values of the various parcels in question, and determine the amount of the taxes due thereon.

Thompson, J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on October 20, 1938.