*125
 
 Opinion
 

 McKINSTER, Acting P. J.
 

 Contending that the County of Riverside had adopted a rule governing discovery in assessment appeals proceedings which was contrary to and thus preempted by state law, the State Board of Equalization (SBE) petitioned the trial court for a writ of mandate to force the county to comply with state law. The trial court concluded that the local rule was not preempted by state law, and denied the petition. The SBE appeals. We affirm.
 

 Introduction
 

 In the abstract, the imposition and collection of property taxes consists of four major steps: assessment, equalization, computation of the tax rate, and collection of the tax.
 
 (Bandini Estate Co.
 
 v.
 
 Los Angeles
 
 (1938) 28 Cal.App.2d 224, 227 [82 P.2d 185].) “Assessment”- is the process of listing the property to be taxed and estimating its value. (See
 
 W. F. & Co.
 
 v.
 
 Bd. of Equalization
 
 (1880) 56 Cal. 194, 205 (cone. opn. of Thornton, J.).) It is the duty of local assessors. (Rev. & Tax. Code, § 404.
 
 [1]
 
 )
 

 “Equalization” is the adjustment of the assessed value up or down to more closely conform to the actual value of the property. (§ 1610.8;
 
 County of Sacramento
 
 v.
 
 Assessment Appeals Bd. No. 2
 
 (1973) 32 Cal.App.3d 654, 663 [108 Cal.Rptr. 434].) Generally, equalization occurs in response to an application by a property owner for a reduction in the assessment of its property. (See § 1603.) Equalization of individual assessments is the responsibility of county boards of equalization. (Cal. Const., art. XIII, § 16.) “The county board of supervisors, or one or more assessment appeals boards created by the county board of supervisors, shall constitute the county board of equalization for a county.”
 
 (Ibid.)
 
 The Board of Supervisors of Riverside County has created two assessment appeals boards (AAB’s).
 

 County boards of supervisors may adopt “rules of notice and proceduref]” by which AAB’s will operate. (Cal. Const., art. XIII, § 16.) Pursuant to that authority, the Riverside County Board of Supervisors adopted a set of such rules to govern its AAB’s. As revised in 1994, those rules included a provision concerning requests for the production of information directed by the assessor to the taxpayer and vice versa (hereinafter, former Rule 10).
 

 In February of 1996, the SBE noted that as the result of the declining real estate market, the number of assessment appeals in Riverside County had increased from less than 5,000 in 1991 to approximately 25,000 in 1994. The
 
 *126
 
 SBE referred to former Rule 10 as “a much needed tool” used by the assessor to try to cope with the increasing backlog of assessment appeals.
 

 Nevertheless, in May of 1996 the SBE notified the county that, in its opinion, former Rule 10 conflicted with and was preempted by section 1606, and was therefore invalid.
 
 [2]
 
 The SBE demanded that the county repeal former Rule 10. The SBE repeated those arguments in a petition for writ of mandate it filed on October 8, 1996. It prays for an order directing the members of the county’s board of supervisors, the members of the county’s two AAB’s, and the county assessor (collectively, hereinafter the County) to comply with section 1606, and prohibiting the County from enforcing former Rule 10.
 

 Also on October 8, 1996, the County amended several of its AAB rules, including former Rule 10. We will refer to the amended form as simply Rule 10.
 

 The SBE contended that Rule 10 was invalid for the same reasons that former Rule 10 had been alleged to have been invalid. The trial court disagreed and denied the petition. The SBE appeals.
 

 Contentions
 

 The SBE contends that both former Rule 10 and the existing Rule 10 are invalid because they conflict with and are preempted by state law, and because they deprive taxpayers of due process. The validity of former Rule 10 was rendered moot when it was superseded by its amended form.
 
 (Paul
 
 v.
 
 Milk Depots, Inc.
 
 (1964) 62 Cal.2d 129, 133-134 [41 Cal.Rptr. 468, 396 P.2d 924];
 
 Bravo Vending
 
 v.
 
 City of Rancho Mirage
 
 (1993) 16 Cal.App.4th 383, 392-393 [20 Cal.Rptr.2d 164].) Therefore, the only issue is the validity of Rule 10.
 

 Discussion
 

 A.
 
 Rule 10 Does Not Conflict With State Law.
 

 1.
 
 Preemption
 

 “ ‘If otherwise valid local legislation conflicts with state law, it is preempted by such law and is void.’ ”
 
 (Sherwin-Williams Co.
 
 v.
 
 City of Los
 
 
 *127
 

 Angeles
 
 (1993) 4 Cal.4th 893, 897 [16 Cal.Rptr.2d 215, 844 P.2d 534], quoting from
 
 Candid Enterprises, Inc.
 
 v.
 
 Grossmont Union High School Dist.
 
 (1985) 39 Cal.3d 878, 885 [218 Cal.Rptr. 303, 705 P.2d 876].) “Conflicts exist if the ordinance duplicates [citations], contradicts [citation], or enters an area fully occupied by general law, either expressly or by legislative implication [citations].”
 
 {Lancaster
 
 v.
 
 Municipal Court
 
 (1972) 6 Cal.3d 805, 807-808 [100 Cal.Rptr. 609, 494 P.2d 681];
 
 Morehart
 
 v.
 
 County of Santa Barbara
 
 (1994) 7 Cal.4th 725, 747 [29 Cal.Rptr.2d 804, 872 P.2d 143].)
 

 Accordingly, to determine whether a particular piece of local legislation is preempted, we ask four questions: (1) does the local legislation duplicate any state law? (2) does the local legislation contradict any state law? (3) does the local legislation enter into a field of regulation which the state has expressly reserved to itself? (4) does the local legislation enter into a field of regulation from which the state has implicitly excluded all other regulatory authority? (B
 
 ravo Vending
 
 v.
 
 City of Rancho Mirage, supra,
 
 16 Cal.App.4th at p. 397.)
 

 To answer those questions, we must compare the allegedly preemptive state law, section 1606, with the local legislation, Rule 10.
 

 2.
 
 Section 1606
 

 Section 1606 deals with the exchange of information between a taxpayer applying to the AAB for a reduction in its assessment and the assessor prior to the hearing on the taxpayer’s application. In relevant part, it provides:
 

 “(a) At the time of filing the application or at any time prior to 20 days before the commencement of the hearing on the application, any applicant for a change of an assessment on the local roll or the assessor, in those cases where the assessed value of the property involved, as shown on the current assessment roll, exceeds one hundred thousand dollars ($100,000) without regard to any exemptions, may cause an exchange of information between himself and the other party by submitting the following data to the other party in writing:
 

 “(1) Information stating the basis of such party’s opinion of value.
 

 “(2) When the opinion of value is to be supported with evidence of comparable sales, information identifying the properties with sufficient certainty such as by assessor parcel number, street address or legal description of the property, the approximate date of sale, the applicable zoning, the price paid, and the terms of the sale, if known.
 

 
 *128
 
 “(3) When the opinion of value is to be supported with evidence based on an income study, information relating to income, expenses and the capitalization method.
 

 “(4) When the opinion of value is to be supported with evidence of replacement costs, information relating to date of construction, type of construction, replacement cost of construction, obsolescence, allowance for extraordinary use of machinery and equipment, and depreciation allowances.
 

 “(b) Notwithstanding any limitation on assessed value contained in subdivision (a), if an applicant for a change of an assessment or the assessor has submitted the data required by subdivision (a) within the specified time, at least 10 days prior to the hearing the other party shall submit to the party who caused the exchange of information in writing the following data:
 

 “[Information stating the basis of the responding party’s opinion of value, supported by the types of information specified in subdivision (a)(2) through (a)(4).]
 

 “The person assigning a hearing date shall provide adequate notice to the parties of such date, so that the exchange of information permitted by this section can be made without requiring a continuance of the hearing.
 

 “Whenever information has been exchanged pursuant to this section the parties may not introduce evidence on matters not so exchanged unless the other party consents to such introduction. However, at the hearing, each party may introduce new material relating to the information received from the other party. If a party introduces new material at the hearing, the other party, upon his request, shall be granted a continuance for a reasonable period of time.”
 

 The taxpayer has had the right to initiate the exchange of information since 1969. (See former § 1608.7, added by Stats. 1969, ch. 1306, § 1, p. 2639.) The assessor’s limited right was conferred in 1973. (Stats. 1973, ch. 782, § 1, p. 1395.)
 

 3.
 
 Rule 10
 

 Rule 10 also concerns the exchange of information prior to an assessment appeal hearing. Entitled “Production and Inspection Demands,” Rule 10 provides:
 

 “(a) To the end that proceedings before the Board move forward in a timely and efficient manner, the Applicant and the Assessor are expected to
 
 *129
 
 cooperate and communicate with each other prior to any hearing before the Board. The Applicant shall comply with any written request by the Assessor, pursuant to Revenue and Taxation Code section. 441, for information, books and records, or inspections of the subject property that disclose acquisition or construction costs, income and expense data, construction details, or physical condition. When requested to do so in writing by the Assessor, the Applicant also shall disclose the basis or bases, whether due to damage, destruction, depreciation, obsolescence, removal of property, or other factors causing a decline in value, such as a changed physical environment, changed income and expense experiences and capitalization or yield rate expectations, or new market comparables events, which form or support the Applicant’s opinion(s) of value set out in the application filed with the Clerk. On written request of the Applicant, the Assessor shall make available for inspection or copying any data or information that is kept or maintained by the Assessor about the subject property, as provided in Revenue and Taxation Code section 408, subdivisions (d), (e), and (f). The information requested by the Assessor or the Applicant shall be provided no later than thirty (30) calendar days from the date of the request unless another date is mutually agreed upon.
 

 “(b) Should the Applicant or the Assessor not comply with the requirements of the preceding subparagraph (a) in a timely manner and introduces any requested materials or information at the Board hearing, then in accordance with Revenue and Taxation Code section 408, subdivision (f) (3), or section 441, subdivision (h), the party affected by the noncompliance may request and shall be granted a continuance for a reasonable period of time. The continuance shall extend the two year period specified in Revenue and Taxation Code section 1604, subdivision (c), for a period of time equal to the period of the continuance. The period of time granted for the continuance shall be established at the discretion of the Board, taking into account the nature and amount of the information introduced, the Board’s calendar assignments, the Assessor’s caseload demands, and the schedules of the parties.”
 

 4.
 
 Comparison of Section 1606 and Rule 10
 

 The procedures specified in Rule 10 differ significantly from those of section 1606:
 

 — Section 1606 requires a reciprocal exchange of information. To receive information from the responding party, the initiating party must first provide its own information. By contrast, Rule 10 provides for unilateral demands for information. The party demanding information need not provide any information of its own unless the other party also demands information.
 

 
 *130
 
 — Section 1606 imposes upon both parties the obligation to exchange the same types of information. Rule 10 describes the information to be provided by the taxpayer differently than the information to be provided by the assessor.
 

 — Section 1606 authorizes any taxpayer to initiate an exchange of information, regardless of the amount of the assessment, but author- - izes the assessor to do so only when the assessment exceeds $100,000. Under Rule 10, the assessor may demand information from the taxpayer whether or not the assessment exceeds that threshold.
 

 — A section 1606 exchange must be initiated not later than 20 days before the hearing, and the other party must respond not later than 10 days before the hearing. Under Rule 10, the responding party need not produce any evidence for 30 days.
 

 In short, Rule 10 conflicts with section 1606 in a number of respects. Were section 1606 the only provision of state law governing the exchange of information between assessors and taxpayers, Rule 10 would clearly be preempted. However, Rule 10 is obviously intended to reflect, not the procedures of section 1606, but rather those of section 441. Does section 441 give assessors a right to demand information from taxpayers in preparation for hearings of assessment appeals which is independent of the rights defined by section 1606?
 
 [3]
 

 5.
 
 Section 441
 

 Section 441 provides that any owner of “real property shall upon request of the assessor file a signed property statement.” That statement must list all taxable property owned by the person (§ 442), state the county and city in which the property is located (§ 443), and provide a detailed description of the property, including its cost (§ 445). The forms by which the assessor requests this information must be approved in advance by the SBE. (§ 452.) The request for a property statement may not “include any question which is not germane to the assessment function.”
 
 {Ibid.)
 

 The assessor may also request information from the taxpayer in addition to that in the property statement: “At any time, as required by the assessor
 
 *131
 
 for assessment purposes, every person shall make available for examination information or records regarding his or her property. ... In this connection details of property acquisition transactions, construction and development costs, rental income, and other data relevant to the determination of an estimate of value are to be considered as information essential to the proper discharge of the assessor’s duties.” (§ 441, subd. (d).)
 
 [4]
 

 If the assessor may demand the production of any information required “for assessment purposes,” is the assessor’s preparation for an assessment appeal hearing an “assessment purpose[]”? Although section 441 has contained that phrase since the Revenue and Taxation Code was enacted in 1939 (Stats. 1939, ch. 154, p. 1286), there is no statutory definition of that term. Nor, to our knowledge, has any court undertaken to construe that term.
 

 Without offering a definition of its own, the SBE argues that because an assessment appeal hearing is an equalization procedure, the assessor’s participation in a hearing is similarly an equalization function. It concludes that a request for information in preparation for such a hearing is not propounded for assessment purposes, and therefore section 441 has no application.
 

 We are not persuaded, for two reasons. First, a similar argument was rejected in
 
 Henderson
 
 v.
 
 Bettis, supra,
 
 53 Cal.App.3d at page 494. Second, as noted above, “equalization,” or the adjustment of the assessment up or down to more closely conform to the actual value of the property, is a function of the AAB’s. Although assessors must attend the hearings of assessment appeals and may introduce evidence (§ 1610.2), they are not thereby engaging in equalization. To the contrary, they are there to defend their assessments. That the Legislature considers that to be an “assessment purpose” is suggested by section 1609.4, which expressly provides that, at hearings of assessment appeals, “[t]he assessor may . . . introduce information obtained pursuant to Section 441.”
 

 The SBE responds that, while evidence produced to the assessor in response to a section 441 demand is admissible at an assessment appeal hearing, no such demand may be propounded by an assessor after an appeal has been filed. After an application for reduction in assessment has been filed, the SBE asserts, section 1606 is the “exclusive procedure for the discovery of information . . . .” In substance, it argues that the introduction
 
 *132
 
 of evidence obtained pursuant to section 441 is an assessment purpose, but that a section 441 demand made for the purpose of preparing for an assessment appeal hearing is not a valid assessment purpose. However, it cites no authority for that proposition, and we know of none ourselves. Certainly, the Legislature drew no such distinction in section 1609.4.
 

 To the contrary, more recent legislation confirms that efforts to gather information in preparation for assessment- appeal hearings are actions which also have an assessment purpose. Added in 1995 (Stats. 1995, ch. 498, § 8) subdivision (h) of section 441 provides: “If a taxpayer fails to provide information to the assessor pursuant to subdivision (d) and introduces any requested materials or information at any assessment appeals board hearing, the assessor may request and shall be granted a continuance for a reasonable period of time. The continuance shall extend the two-year period specified in subdivision (c) of Section 1604 for a period of time equal to the period of the continuance.” Subdivision (c) of section 1604 provides that if the AAB “fails to make a final determination on the application for reduction in assessment of property within two years of the timely filing of the application, the taxpayer’s opinion of market value as reflected on the application for reduction in assessment shall be the value upon which taxes are to be levied” until the AAB does render a final decision.
 

 If assessors were not permitted to use requests for information under section 441, subdivision (d), to prepare for hearings on assessment appeals, then there would be no reason to grant continuances of those hearings for the failure to respond to those requests. Nor would the time period within which such appeals are to be decided be extended as the result of a failure to respond to those requests. That the Legislature anticipated assessors would use section 441, subdivision (d), requests as a means of prehearing discovery seems clear.
 

 On the other hand, different statutory sections dealing with the same subject should be harmonized, to the extent possible. (Dyna-Med,
 
 Inc.
 
 v.
 
 Fair Employment & Housing Com.
 
 (1987) 43 Cal.3d 1379, 1387 [241 Cal.Rptr. 67, 743 P.2d 1323].) The SBE argues that, if an assessor can propound a section 441 demand after an appeal has been filed, there is no need for that portion of section 1606 which allows an assessor to initiate an exchange of information, and no sense in limiting the power of the assessor to do so only when the assessment exceeds $100,000.
 

 In attempting to determine whether section 1606 was intended to establish the exclusive or merely an alternative means by which assessors could
 
 *133
 
 demand information, we turned to the legislative history of the 1973 bill by which that section was amended to give assessors the power to initiate exchanges. However, the limited documentary record maintained by the State Archives fails to reveal any hints as to the intended interrelationship between sections 441 and 1606. Indeed, section 441 is not mentioned in those records at all, indicating that the Legislature never even considered the issue.
 

 Section 441, subdivision (d), is a “broad grant[] of power to the Assessor to demand information.”
 
 (Roberts
 
 v.
 
 Gulf Oil Corp.
 
 (1983) 147 Cal.App.3d 770, 783 [195 Cal.Rptr. 393].) In the absence of any evidence of a legislative intent to preclude the exercise of that power when preparing for assessment appeal hearings, and given the clear indication to the contrary in subdivision (h) of section 441, we conclude that, after a taxpayer has applied for a reduction in its assessment, assessors may prepare for the hearing on that assessment appeal by demanding information from the taxpayer pursuant to subdivision (d) of section 441.
 

 Because counties are expressly authorized to adopt rules governing assessment appeal hearings, and because the County’s Rule 10 is consistent with section 441, that rule is not preempted by state law.
 

 B.
 
 Rule 10 Does Not Deprive Taxpayers of Due Process.
 

 “A taxpayer has a right to a hearing on his property tax assessment, and if an application for a hearing is denied for insufficient legal reason there is a denial of due process.”
 
 (Midstate Theatres, Inc.
 
 v.
 
 Board of Supervisors, supra,
 
 46 Cal.App.3d at p. 208.) The SEE contends that if a taxpayer fails to comply with the assessor’s request for information, the hearing on the taxpayer’s assessment appeal will be continued indefinitely until the taxpayer complies to the satisfaction of the assessor. It concludes that the appeal might never come to hearing, and Rule 10 therefore denies taxpayers due process.
 

 It is mistaken. Rule 10 provides in relevant part: “Should the Applicant or the Assessor not comply with the requirements of the preceding subparagraph (a) in a timely manner and introduces any requested materials or information at the Board meeting, then in accordance with Revenue and Taxation Code section 408, subdivision (f) (3), or section 441, subdivision (h), the party affected by the noncompliance may request and shall be granted a continuance for a reasonable period of time.” (Rule 10(b).)
 

 Nothing in the rule provides or suggests that the hearing on the appeal will not be set until the taxpayer has complied with the assessor’s demands for
 
 *134
 
 information. The rule says only that the hearing will be continued if (1) the taxpayer has failed to comply
 
 and
 
 (2) the taxpayer introduces evidence which should have been disclosed in response to the assessor’s request. Therefore, the grounds for a continuance cannot be shown to exist until after the hearing has commenced.
 
 [5]
 

 Nor does the rule provide that, once continued, the hearing may not be resumed until the taxpayer belatedly complies with the assessor’s request and the assessor is satisfied with the adequacy of that response. The continuance is not designed to provide time for the taxpayer to make a further response to the assessor’s request. The evidence having been disclosed by its introduction at the hearing, requiring another disclosure directly to the assessor would serve no purpose. Instead, the reason for the continuance of the hearing is to allow the assessor time in which to evaluate and attempt to rebut the previously undisclosed evidence introduced at the hearing by the taxpayer.
 

 Finally, nothing in the rule suggests that the length of the continuance is determined by the assessor. To the contrary, “[t]he period of time granted for the continuance shall be established at the discretion of the Board . . . .” (Rule 10(b).)
 

 In short, Rule 10 does not deprive taxpayers either of their rights to hearings or of due process.
 

 Disposition
 

 The judgment is affirmed.
 

 Ward J., and Gaut, J., concurred.
 

 [1]
 

 Unlss specified otherwise, all section references are to this code.
 

 [2]
 

 The SBE contends that former Rule 10 also conflicts with SBE’s Property Tax Rule 305.1. (Cal. Code Regs., tit. 18, § 305.1.) However, because that regulation merely restates the provisions of section 1606 without substantive changes or additions, its preemptive effect need not be separately analyzed.
 

 [3]
 

 The cases relied upon by the SBE
 
 (Bank of America
 
 v.
 
 County of Fresno
 
 (1981) 127 Cal.App.3d 295 [179 Cal.Rptr. 497],
 
 Henderson
 
 v.
 
 Bettis
 
 (1975) 53 Cal.App.3d 486 [126 Cal.Rptr. 199], and
 
 Midstate Theatres, Inc.
 
 v.
 
 Board of Supervisors
 
 (1975) 46 Cal.App.3d 204 [119 Cal.Rptr". 894]) do not answer that question because they do not consider or even refer to section 441. “Obviously, cases are not authority for propositions not considered therein.”
 
 (Roberts
 
 v.
 
 City of Palmdale
 
 (1993) 5 Cal.4th 363, 372 [20 Cal.Rptr.2d 330, 853 P.2d 496].)
 

 [4]
 

 To the same effect is section 470, subdivision (a): “Upon request of an assessor, a person owning, claiming, possessing, or controlling property subject to local assessment shall make available at his or her principal place of business, principal location or principal address in California or at a place mutually agreeable to the assessor and the person, a true copy of business records relevant to the amount, cost, and value of all property that he or she owns, claims, possesses, or controls within the county.”
 

 [5]
 

 The SBE contends that, in practice, the County continues the hearings before they commence whenever the taxpayers refuse to comply with the assessor’s request for information. However, that claim is not within the scope of the allegations of the petition for writ of mandate, nor is it supported by any citation to evidence in the record. For both of those reasons, we do not consider it.