Filed 8/17/21 (unmodified opinion attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| CITY AND COUNTY OF SAN FRANCISCO, | A160659 |
| Plaintiff and Respondent, | (City & County of San Francisco Super. Ct. No. CGC-18-569987) |
| v. | |
| ALL PERSONS INTERESTED IN THE MATTER OF PROPOSITION G (NOWAK), | **ORDER MODIFYING OPINION; AND ORDER DENYING PETITION FOR REHEARING** |
| Defendants and Appellants. | **[NO CHANGE IN JUDGMENT]** |

**THE COURT[*]:**

It is ordered that the opinion filed herein on July 26, 2021, be modified in the following particulars:

1. On page 4, line 17, the sentence beginning "By mid-November 2017" is deleted and replaced with the following sentence:

> By Autumn 2017, the District and Union were considering whether the parcel tax could be proposed as a citizens' initiative.

2. On page 24, lines 3 and 4, the clause "Without disputing that Proposition G met the criteria set forth in the Charter" is deleted and replaced with the following clause:

> Without disputing that Proposition G met the criteria set forth in Section 14.101 of the Charter . . .

---

[*] Pollak, P.J., Tucher, J. and Brown, J. participated in the decision.

These modifications do not effect a change in the judgment.

Appellant's petition for rehearing is denied.


Dated:_____                    _____ P.J.

| | |
|---|---|
| Trial Court: | City & County of San Francisco Superior Court |
| Trial Judge: | Hon. Ethan P. Schulman |
| Counsel for Appellants: | Greenberg Traurig: Bradley R. Marsh and Colin W. Fraser |
| Counsel for Amicus Curiae on behalf of Appellants: | Howard Jarvis Taxpayers Foundation; Jonathan M. Coupal, Timothy A. Bittle, Laura E. Dougherty |
| Counsel for Respondents: | Dennis J. Herrera, City Attorney; Wayne K. Snodgrass, Deputy City Attorney |

*CCSF v. All Persons – Prop G* (A160659)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| CITY AND COUNTY OF SAN FRANCISCO,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>ALL PERSONS INTERESTED IN THE MATTER OF PROPOSITION G,<br><br>      Defendants and Appellants. | A160659<br><br>(City & County of San Francisco Super. Ct. No. CGC-18-569987) |

Proposition 13 and Proposition 218 amended the California Constitution to require that any special tax adopted by a local government entity take effect only if approved by a two-thirds vote of the electorate. We recently interpreted these constitutional provisions "as coexisting with, not displacing, the people's power to enact initiatives by majority vote." (*City and County of San Francisco v. All Persons Interested in the Matter of Proposition C* (2020) 51 Cal.App.5th 703, 708 (*Matter of Prop. C*).) In *Matter of Prop. C* we held that a measure placed on the ballot as a local citizens' initiative requires a majority, not a supermajority, vote to pass. (*Id.* at pp. 708–709.) This case raises the questions whether *Matter of Prop. C* was properly decided and whether it can be distinguished.

In 2018, some 60 percent of San Franciscans voting on Proposition G— an initiative measure entitled "Parcel Tax for San Francisco Unified School

District"—approved the measure. Thereafter, the City and County of San Francisco (the City) filed this action to establish that Proposition G was validly enacted. The City's complaint against "All Persons Interested" was answered by defendant Wayne Nowak, who contends that Proposition G is invalid because it failed to garner the two-thirds vote required by article XIII A, section 4 of the California Constitution[1] (added by Proposition 13) and article XIII C, section 2 (added by Proposition 218), the same arguments we rejected in *Matter of Prop. C.* Nowak also contends that a provision of Proposition 218 unique to parcel taxes—article XIII D, section 3, subdivision (a) (art. XIII D, § 3(a))—requires a two-thirds vote of the electorate to enact Proposition G. Although the argument is new, it fails for similar reasons, as does Nowak's alternative argument that an older constitutional provision precludes a per-parcel tax on real property. Finally, Nowak seeks to distinguish *Matter of Prop. C* on the grounds that Proposition G was conceived and promoted by local government officials and is thus not a valid citizens' initiative. We reject this argument as based on a misunderstanding of the initiative process.

Because we stand by our decision in *Matter of Prop. C* and reject Nowak's additional arguments, we affirm the trial court's grant of summary judgment to the City.

## BACKGROUND

### I. The Pleadings

In September 2018, the City filed a complaint to validate Proposition G, seeking a judicial declaration that Proposition G was "duly enacted by the voters . . . and is legal, valid and binding." (See Code Civ. Proc., § 867 et seq.) The complaint describes Proposition G as a proposal to authorize the City to

---

[1] Citations to "articles" refer to the California Constitution.

2

collect an annual parcel tax, with all revenues from the tax to be transferred to the San Francisco Unified School District (District) and placed in a fund for restricted uses, including paying teacher salaries and funding staff at high-needs schools.  The City alleges that proponents of Proposition G circulated petitions to the San Francisco electorate, qualifying the measure for placement on the ballot in the June 5, 2018 election.  The City also alleges that Proposition G was "legally and validly adopted" because its passage required only a simple majority of votes cast and it "received the affirmative votes of 60.76% of the 238,133 San Francisco voters who voted on the measure."

In his answer to the complaint, Nowak admits the City's description of Proposition G is accurate and that it was approved by 60.76 percent of the voters, but he denies that Proposition G was legally and validly adopted. Nowak alleges that Proposition G violates state constitutional requirements precluding local government from imposing a special tax absent approval of a two-thirds vote of the electorate.  (Art. XIII A, § 4; Art. XIII C, § 2, subd. (d) (art. XIII C, § 2(d)); Art. XIII D, § 3(a).)

Nowak also alleges that Proposition G represents an invalid attempt by the District to evade the constitution's supermajority vote requirement. According to this theory, the District and "its union," the United Educators of San Francisco (Union), agreed to a "16 percent pay increase for union employees that was contingent upon additional revenue being approved by San Francisco voters."  Then, instead of the District proposing "its own tax," the "union members and others crafted . . . Proposition G as a citizen initiative," so they could argue that it was "subject to only a 50% vote threshold."  Nowak alleges that this "deliberate action to reduce the vote threshold requirement is impermissible."

3

## II. Summary Judgment Proceedings

In May 2020, the trial court heard cross-motions for summary judgment and granted judgment to the City. In a 20-page order, the court found the material facts to be undisputed and concluded that Proposition G was validly enacted by a majority of the voting electorate.

### A. Undisputed Material Facts

In February 2017, the District and Union began negotiating the terms of their 2017–2020 labor contract. During an initial meeting, both the District and Union expressed the view that " 'teachers deserve and will receive a raise, the question is how the funds for the raise will be realized.' " The District " 'expressed its willingness to work collaboratively with the Union to find' " a solution. In the following months, the District considered raising funds via a parcel tax measure to be placed on the ballot in 2018, discussed that option with the Union, and participated with Union representatives and "political consultants" in a Parcel Tax Planning Committee.

By mid-November 2017, the District and Union were considering whether the parcel tax could be proposed as a citizens' initiative. In late November, an attorney named James Sutton circulated to the planning committee and others a confidential draft of a citizens' initiative measure proposing the parcel tax. A deputy superintendent of the District who served on the planning committee proposed edits to Sutton's draft.

On December 8, 2017, the San Francisco Department of Elections (Department) received a "Notice of Intention to Circulate Petitions" for a proposed citizens' initiative, which was accompanied by the proposed text of Proposition G. The notice of intent was signed by three San Francisco voters: Jose Tengco, David Strother, and Catherine Sullivan. Later that month, the

4

Department received documentation establishing "Proof of Publication" of the notice of intent, ballot title and initiative summary. The proof of publication, which was submitted by the Sutton Law Group, reflects that the text of the published notice identified Tengco, Strother and Sullivan as the official proponents of Proposition G.

Union representatives had asked Tengco, Strother and Sullivan to serve as proponents of Proposition G. The three individuals did not participate in drafting Proposition G, and they did not personally pay any of the filing fees. Strother did not even read the ballot measure before agreeing to serve as a proponent, though he understood the Union was organizing to put Proposition G on the ballot because if the District sponsored the measure it would require a two-thirds vote to pass. Tengco, after becoming a proponent, attended meetings and had discussions about the parcel tax, and he gathered signatures to get Proposition G on the ballot.

Sullivan "turned in to the Department initiative petitions signed by a reported 16,656 San Francisco voters." After reviewing a random sampling of signatures, the Department certified to Sullivan that the petitions contained a sufficient number of valid signatures to qualify Proposition G for the ballot. Proposition G appeared as a citizens' initiative on the San Francisco ballot for the June 5, 2018 Consolidated Statewide Primary Election and received 60.76 percent affirmative votes.

### B. The Trial Court's Findings

The trial court framed its May 2020 summary judgment order to address three theories Nowak presented in support of his contention that Proposition G was invalid.

First, Nowak claimed that Proposition G is not a valid citizens' initiative within the meaning of the City's charter because the three

5

individuals who signed the notice of intent were not genuine proponents. Based on evidence the District worked with the Union and others to get Proposition G passed, Nowak argued that Proposition G was the District's " 'product,' " and that the District had misappropriated the people's power to propose initiatives. The trial court rejected this claim as "irreconcilable" with the plain language of the City Charter and governing provisions of the Elections Code.

The court reasoned that the Charter empowers San Francisco voters to "enact initiatives" (S.F. Charter, § 14.100), and provides that an initiative may be proposed by "presenting to the Director of Elections a petition containing the initiative and signed by voters in a number equal to at least five percent of the votes cast" in the preceding mayoral election (S.F. Charter, § 14.101). Here, the court found, undisputed evidence establishes that Proposition G satisfied these requirements. The court also rejected as groundless Nowak's claim that the three individuals who signed the notice of intent to circulate petitions on behalf of Proposition G were not its "proponents." The court based this conclusion on the definition of a proponent codified in section 342 of the Elections Code, which "governs the circulation and qualification of initiative petitions in San Francisco." (Citing S.F. Muni. Elec. Code, § 310.) Section 342 defines a proponent or proponents as "the person or persons who publish" the notice of intent. (Elec. Code, § 342.) The court found that undisputed evidence shows that Tengco, Strother and Sullivan signed the notice of intent to circulate petitions for Proposition G, caused it to be submitted and published, and turned in petitions containing the requisite number of signatures.

Nowak's second claim was that Proposition G is invalid as a matter of law under provisions of the California Constitution requiring special taxes

6

imposed by local governments to be approved by a two-thirds vote of the electorate.  (Art. XIII A, § 4; Art. XIII C, § 2(d); Art. XIII D, § 3(a).)  Rejecting Nowak's interpretation of these constitutional provisions, the trial court found that "the constitutional requirements of a supermajority vote for taxes proposed by local governments do not apply to taxes proposed by voter initiative, such as Proposition G."  As authority for this finding, the court relied primarily on *California Cannabis Coalition v. City of Upland* (2017) 3 Cal.5th 924 (*California Cannabis*) and *Kennedy Wholesale, Inc. v. State Bd. of Equalization* (1991) 53 Cal.3d 245 (*Kennedy Wholesale*).  In addition, the court stated it was reaffirming its ruling in prior cases raising the same "principal issues."  One of these prior decisions we affirmed the following month, in *Matter of Prop. C, supra*, 51 Cal.App.5th 703.

Finally, Nowak argued that the supermajority vote requirement for special taxes imposed by local governments applies to voter initiatives by virtue of the San Francisco Charter, which limits initiatives to those measures "within the powers conferred upon the Board of Supervisors to enact."  (S.F. Charter, Art. XVII.)  Rejecting this claim, the trial court found that the two-thirds vote requirement is not a substantive limitation on the authority of the Board of Supervisors, but a procedural requirement presumed not to apply to the initiative power.  (Citing e.g. *California Cannabis, supra*, 3 Cal.5th at p. 942.)  In other words, the court found, "the procedural two-thirds vote requirement in the California Constitution that limit[s] the Board of Supervisors' authority to impose new taxes does not apply to the voters' initiative power, either directly under those provisions or indirectly under the San Francisco Charter."

## DISCUSSION

### I. Guiding Principles

Summary judgment may be granted when "there is no triable issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.) "Rulings on motions for summary judgment are reviewed de novo." (*Brown v. Mid-Century Ins. Co.* (2013) 215 Cal.App.4th 841, 850.)

Nowak's theories for declaring Proposition G invalid share a common premise, which is that the initiative power to adopt laws by majority vote does not apply to Proposition G. The initiative power is a constitutional power reserved by the people, pursuant to which electors may propose statutes and amendments to the constitution and adopt or reject them. (Art. II, § 8; Art. IV, § 1.) "A defining characteristic" of the initiative power is that the people may "adopt laws by majority vote." (*Matter of Prop. C.*, *supra*, 51 Cal.App.5th at p. 709.)

Nowak contends that passage of Proposition G is nevertheless subject to a supermajority vote requirement because the measure proposed a special tax on property and the California Constitution restricts the authority of state and local governments to impose such taxes without the approval of two-thirds of the voting electorate. (Art. XIII A, § 4; Art. XIII C, § 2(d); Art. XIII D, § 3(a).) There is no dispute in this case that Proposition G involves a special tax. All taxes imposed by a local government are either general taxes "imposed for general governmental purposes" or special taxes, which are taxes "imposed for specific purposes." (Art. XIII C, §§ 1, subds. (a) & (d); 2.) The dispute in this case pertains to whether constitutional provisions

8

establishing a two-thirds vote requirement for special taxes imposed by state and local governments also apply to Proposition G.

## II. The State Constitution's Supermajority Vote Requirements

In *Matter of Prop. C*, this court held that the supermajority vote requirements of article XIII A, section 4 and article XIII C, section 2(d) constrain only local government entities such as the Board of Supervisors, and do not displace the people's power to enact initiatives by majority vote. (*Matter of Prop. C*, *supra*, 51 Cal.App.5th at pp. 721, 724.)  We affirm that holding here and extend it to include article XIII D, section 3(a), rejecting Nowak's theory that these provisions require a citizens' initiative enacting a special tax to command a supermajority vote.  We also reject a new argument Nowak presents for the first time on appeal, that if these supermajority vote provisions do not apply, then an older provision in the state Constitution, article XIII, section 1, prohibits a citizens' initiative from imposing a parcel tax.[2]

### A. The Constitution's Supermajority Vote Requirements Do Not Constrain the People's Initiative Power

#### *1. Article XIII A, Section 4 (Proposition 13)*

Nowak relies first on article XIII A, section 4, which provides in relevant part:  "Cities, Counties and special districts, by a two-thirds vote of the qualified electors of such district, may impose special taxes on such district, except ad valorem taxes on real property."  (Art. XIII A, § 4.)  In this context, the terms "Cities, Counties and special districts" must be construed to refer to these governmental entities exercising their power to tax through an elected board of public officials.  The terms do not reach the electorate

---

[2]  Amicus curiae Howard Jarvis Taxpayers Association makes the same argument.

9

exercising its initiative power. (*Matter of Prop. C*, *supra*, 51 Cal.App.5th at p. 722.) Thus, although this provision "requires governmental entities to gain the approval of a supermajority of voters before imposing a special tax," it "does not repeal or otherwise abridge by implication the people's power to raise taxes by initiative, and to do so by majority vote. Any such partial repeal by implication is not favored by the law, which imposes a duty on courts to jealously guard, liberally construe and resolve all doubts in favor of the exercise of the initiative power." (*Id.* at p. 721.)

Nowak argues that article XIII A, section 4 has long been interpreted to impose its two-thirds vote requirement on citizen initiatives. (Citing *Kennedy Wholesale*, *supra*, 53 Cal.3d 245; *Altadena Library Dist. v. Bloodgood* (1987) 192 Cal.App.3d 585, 587; *City of Dublin v. County of Alameda* (1993) 14 Cal.App.4th 264.) Nowak is mistaken, as none of these cases addresses whether the supermajority vote requirement in article XIIIA, section 4 applies to a citizens' initiative. (*Matter of Prop. C*, *supra*, 51 Cal.App.5th at pp. 715, 719.) Indeed, we are aware of only two appellate cases other than *Matter of Prop. C* that have ever addressed the issue, and both agree with *Matter of Prop. C*. (See *City of Fresno v. Fresno Building Healthy Communities* (2020) 59 Cal.App.5th 220, 226 (*Fresno*) ["We fully agree with and endorse the holdings and reasoning of [*Matter of Prop. C*], and find that case controls the outcome here"]; *Howard Jarvis Taxpayer Assn. v. City and County of San Francisco* (2021) 60 Cal.App.5th 227, 237 (*HJTA*) ["attempts to cast doubt on or . . . distinguish [*Matter of Prop. C*] . . . are unavailing"].)

Although *Kennedy Wholesale* does not address whether the two-thirds vote requirement in article XIII A, section 4 applies to local citizens' initiatives, the Court's analysis of a different provision in Proposition 13 compels the conclusion that the supermajority requirement does not apply.

10

In *Kennedy Wholesale*, our Supreme Court found that article XIII A, section 3 does not impliedly repeal the people's power to increase state taxes by initiative, and section 3's two-thirds vote requirement does not apply to *statewide* initiative statutes. (*Kennedy Wholesale, supra*, 53 Cal.3d at pp. 248–252.) By parity of reasoning, section 4's two-thirds vote requirement does not apply to *local* initiative statutes. (*Matter of Prop. C, supra*, 51 Cal.App.5th at pp. 715–718.)

Nowak urges this court to reconsider our findings and conclusions in *Matter of Prop. C*. We decline that invitation. With one exception, *Matter of Prop. C* has already addressed and rejected the arguments regarding article XIII A, section 4 that Nowak presents here. Rather than re-plowing the same ground, we confine our discussion to the one issue that is new since we decided *Matter of Prop. C*.[3]

Nowak questions *Matter of Prop. C*'s reliance on cases that strictly construe ambiguous language in article XIII A, section 4 in order to cabin Proposition 13's "fundamentally undemocratic" requirement of a supermajority vote. (Citing *Los Angeles County Transportation Com. v. Richmond* (1982) 31 Cal.3d 197, 201 (*Richmond*); accord *City and County of San Francisco v. Farrell* (1982) 32 Cal.3d 47, 52 & 57 (*Farrell*).) Nowak argues that Proposition 218 effectively reversed this strict construction rule by including a liberal construction clause. (Citing *Capistrano Taxpayers Assn., Inc. v. City of San Juan Capistrano* (2015) 235 Cal.App.4th 1493, 1512, fn. 19.)

---

[3] We grant Nowak's unopposed request for judicial notice of ballot materials pertaining to several voter initiative measures, including a 1978 "California Voters Pamphlet concerning Proposition 13."

11

We disagree, seeing no conflict between Proposition 218's liberal construction clause and the maxim of *Richmond* and *Farrell*, that "the language of section 4 must be strictly construed and ambiguities resolved in favor of permitting voters of cities, counties and 'special districts' to enact 'special taxes' by a majority rather than a two-thirds vote." (*Richmond, supra*, 31 Cal.3d at p. 205; see also *Farrell, supra*, 32 Cal.3d at pp. 52, 57.) Proposition 218 instructs that its provisions "be liberally construed to effectuate its purposes of limiting local government revenue and enhancing taxpayer consent." (Ballot Pamp., Gen. Elec. (Nov. 5, 1996) argument in favor of Prop. 218, § 5, p. 109; Historical Notes, 2A West's Ann. Const. (2008 supp.) foll. Cal. Const., art. XIII C, p. 85.) But the *Richmond/Farrell* rule does limit local government revenue except to the extent taxpayers have expressly consented, by proposing and adopting a citizens' initiative. "Proposition 218 was designed to prevent a local legislative body from imposing a special tax disguised as an assessment," or from otherwise evading *any* requirement for voter approval of revenue measures. (*Silicon Valley Taxpayers' Assn., Inc. v. Santa Clara County Open Space Authority* (2008) 44 Cal.4th 431, 449.) It was not designed to circumscribe the people's power to impose special taxes on themselves by a majority, instead of a two-thirds, vote. (*California Cannabis, supra*, 3 Cal.5th at pp. 938–939.)

Our Supreme Court endorsed the *Richmond/Farrell* rule in *Kennedy Wholesale* (53 Cal.3d at p. 252, fn. 6), and has not since retracted it. *Rider v. County of San Diego* (1991) 1 Cal.4th 1 (*Rider*), on which Nowak relies to argue otherwise, declined to extend *Richmond* to uphold a special tax in the peculiar circumstances of that case, but *Rider* recounted *Richmond*'s strict construction rule without casting doubt on its continuing validity. (*Rider*, at p. 9; but see *Howard Jarvis Taxpayers' Assn. v. State Bd. of Equalization*

12

(1993) 20 Cal.App.4th 1598, 1603 [construing *Rider* as having retracted *Richmond*'s strict construction rule].)

In any event, *Matter of Prop. C* does not depend on the continuing viability of the *Richmond/Farrell* rule. Our guiding principle there was a different maxim of liberal construction: Because the initiative power is " ' "one of the most precious rights of our democratic process," ' " courts must " ' "apply a liberal construction to this power wherever it is challenged in order that the right be not improperly annulled." ' " (*Matter of Prop. C, supra,* 51 Cal.App.5th at p. 710, quoting *Associated Home Builders, etc. Inc. v. City of Livermore* (1976) 18 Cal.3d 582, 594–595; see also *HJTA, supra,* 60 Cal.App.5th at p. 237.) It was on that basis that we declined to "hobble[] the exercise of the initiative power by lashing it to a supermajority vote requirement." (*Matter of Prop. C, supra,* 51 Cal.App.5th at p. 716.)

### *2. Article XIII C, Section 2(d) (Proposition 218)*

Nowak also relies on article XIII C, section 2(d), which states: "No local government may impose, extend, or increase any special tax unless and until that tax is submitted to the electorate and approved by a two-thirds vote." (Art. XIII C, § 2(d).) Nowak contends that the phrase "local government" is broad enough to encompass the electorate exercising its initiative power, and that excluding voter initiatives from the reach of this provision would be inconsistent with the intent of the voters who passed Proposition 218.

Proposition 218's definition of the term proves otherwise. "Article XIII C, section 1 defines ' "Local government" ' to mean 'any county, city, city and county, including a charter city or county, any special district, or any other local or regional governmental entity.' This definition—like article XIII A, section 4—lists specific governmental entities but does not reference the electorate," and its "catch-all for 'other . . . governmental entit[ies]' . . . only

13

strengthens the City's argument." (*Matter of Prop. C, supra*, 51 Cal.App.5th at p. 722.)

Nowak's interpretation of article XIII C, section 2(d) is inconsistent with our Supreme Court's decision in *California Cannabis*, which found that "nothing in the text of article XIII C, or its context, supports the conclusion that the term 'local government' was meant to encompass the electorate." (*California Cannabis, supra*, 3 Cal.5th at pp. 946–947.) The Court also found that even if this term could be construed as ambiguous, extrinsic evidence establishes that the voters who adopted Proposition 218 did not intend article XIII C, section 2 to burden the initiative power. (*California Cannabis*, at pp. 938–939.) On this basis, *California Cannabis* held that article XIII C, section 2, subdivision (b) (section 2(b))—which requires that a local measure imposing a general tax appear on the ballot in a general election—applies only to measures proposed by local government, not to measures the people place on the ballot in exercising their initiative power. (*Id.* at p. 945.)

Nowak contends that the term " 'local government' has a different meaning in section 2(b)" from its meaning in section 2(d) of article XIII C, an argument we consider untenable. "Sections 2(b) and 2(d) are found in the same article and section of the state Constitution. They were both added by Proposition 218. They employ parallel language and incorporate the exact same definition of local government set forth in article XIII C, section 1. The *California Cannabis* court held that the definition of 'local government' in article XIII C, section 2 of the Constitution is not 'broad enough to include the electorate.' (*California Cannabis, supra*, 3 Cal.5th at p. 937.) That holding applies" in *Matter of Prop. C* and here. (*Matter of Prop. C, supra*, 51 Cal.App.5th at p. 723; accord *Fresno, supra*, 59 Cal.App.5th at p. 236; *HJTA, supra*, 60 Cal.App.5th at p. 238.)

14

Nowak resists this application of *California Cannabis* on the ground that section 2(b) differs from section 2(d) in one respect. *California Cannabis* observes, "the voters explicitly imposed a procedural two-thirds vote requirement on themselves in article XIII C, section 2, subdivision (d)," and this provision was absent from subdivision (b). (*California Cannabis*, *supra*, 3 Cal.5th at p. 943.) But in pointing out this distinguishing feature of section 2(d), *California Cannabis* characterizes section 2(d)'s supermajority restriction as a procedural requirement that must be met "before a *local government* can impose" a special tax. (*California Cannabis*, 3 Cal.5th at p. 943, italics added.) This two-thirds vote requirement "constitutes a higher vote requirement than would otherwise apply," the Court explained, contrasting the margin required when a measure is placed on the ballot by a local citizens' initiative. (*Ibid.*, citing Elec. Code, "§ 9217 [providing for a majority vote]".)[4] Because this passage is specific to "local government" measures (in contrast local citizens' initiatives), nothing it says about section 2(d) suggests the electorate, exercising its initiative power, requires a supermajority to impose such a tax.

---

[4] Nowak argues that by citing Election Code section 9217, instead of Election Code section 9222 prescribing the vote threshold for a government-sponsored measure, *California Cannabis* conveys that section 2(d)'s two-thirds vote requirement applies to local citizens' initiatives as well as government-sponsored measures. We decline to read so much into a mere parenthetical citation, especially when Nowak's construction of the passage ignores the contrast the Court is drawing and is inconsistent with the Court's many pages of explanation as to why "local government" should be understood to exclude the citizens exercising their initiative power. (See *California Cannabis*, *supra*, 3 Cal.5th at pp. 936–943; see also *Fresno*, *supra*, 59 Cal.App.5th at pp. 237–238 [rejecting same argument regarding *California Cannabis*'s citation to section 9217].)

### *3. Article XIII D, Section 3(a) (Proposition 218)*

Finally, Nowak relies on article XIII D, section 3(a), a provision we did not address in *Matter of Prop. C.* This provision states in relevant part: "No tax, assessment, fee, or charge shall be assessed by any agency upon any parcel of property or upon any person as an incident of property ownership except . . . (2) Any special tax receiving a two-thirds vote pursuant to Section 4 of Article XIII A." (Art. XIII D, § 3(a).)

Pursuant to the plain language of this provision, no parcel tax that is a special tax may be assessed by an "agency" unless approved by a two-thirds vote of the electorate. (*Ibid.*) Article XIII D defines the term "agency" to mean "any local government as defined in subdivision (b) of Section 1 of Article XIII C," which is the same definition *California Cannabis* construed as excluding the electorate. (Art. XIII D, § 2, subd. (a); *California Cannabis*, *supra*, 3 Cal.5th at p. 937; see also *id*. at pp. 939–940 [notion that " 'agency' in Article XIII D also includes voters" is "at best . . . improbable"].)

We conclude that article XIII D, section 3(a) does not constrain the initiative power for the same reasons that the supermajority vote requirements in article XIII A and article XIII C do not apply to citizens' initiatives. The text of the constitutional provision does not reach the electorate because the electorate is not an "agency." And the Proposition 218 ballot materials "evince a specific concern with *politicians* and their imposition of taxes without voter approval," a concern inapplicable to a tax levied by citizens' initiative. (*California Cannabis*, *supra*, 3 Cal.5th at p. 941.)

Nowak contends article XIII D, section 3(a) is different from the other provisions upon which he relies because it limits when a tax may be " 'assessed,' " rather than " ' "imposed." ' " This distinction is critical, Nowak

16

argues, because the word "assess" has a narrow meaning, which refers specifically to the executive function of collecting a tax. Nowak posits that because this constitutional provision uses the word " '*assessed*,' " it bars local governments from collecting a special tax, even one proposed by a citizens' initiative, unless the tax has been approved by a two-thirds vote.

This argument fails because Nowak is mistaken about the meaning of "assess." First, the authority on which he relies defines the related term " '[a]ssessment' " as meaning "the process of listing the property to be taxed and estimating its value." (*State Bd. of Equalization v. Ceniceros* (1998) 63 Cal.App.4th 122, 125.) Proposition 218 defines " '[a]ssessment' " differently, as a "levy or charge upon real property by an agency for a special benefit conferred upon the real property." (Art. XIII D, § 2(b).) Because article XIII D does not adopt the technical definition on which Nowak relies, nor does it otherwise define the term "assess," we construe the word according to its ordinary meaning. (See *De Vries v. Regents of University of California* (2016) 6 Cal.App.5th 574, 591.) Pursuant to one dictionary definition, "assess" means "to subject to a tax, charge, or levy," or "to impose (as a tax) according to an established rate." (See Merriam-Webster's Collegiate Dict. (10th ed. 2001) p. 69.) With this definition equating "assess" and "impose," Nowak's "critical" distinction evaporates. (See also *California Cannabis, supra,* 3 Cal.5th at pp. 944–945 [rejecting parallel argument that "the term 'impose' . . . includes the collection of taxes by a local government"].)

But even if the term "assessed" were to create an ambiguity, nothing in the text of article XIII D or its context supports the conclusion that article XIII D, section 3(a) constrains the initiative power. Nor does Nowak provide evidence that such a meaning was intended. "Without a direct reference in the text of a provision—or a similarly clear, unambiguous indication that it

17

was within the ambit of a provision's purpose to constrain the people's initiative power—we will not construe a provision as imposing such a limitation." (*California Cannabis, supra*, 3 Cal.5th at p. 931.)

## B. Article XIII, Section 1 Does Not Prohibit a Special Parcel Tax

Nowak now argues, in the alternative, that if the constitutional provisions requiring a supermajority vote of the electorate for a special tax do not apply to citizens' initiatives, then Proposition G's parcel tax lacks constitutional authority and is invalid under article XIII, section 1.

Article XIII, section 1 states that, "[u]nless otherwise provided by this Constitution or the laws of the United States . . . (a) All property is taxable and shall be assessed at the same percentage of fair market value." This provision establishes the general rule that property taxes in California must be ad valorem. (*City of Oakland v. Digre* (1988) 205 Cal.App.3d 99, 110 (*Digre*).) Proposition G imposes a flat annual tax on each parcel of real estate in San Francisco without regard to the value of the property, and so is not an ad valorem tax; it is a parcel tax. Nowak acknowledges that article XIII D, section 3 provides an exception to the rule of article XIII, section 1 for certain parcel taxes. In particular, article XIII D, section 3(a) authorizes a parcel tax that is also a special tax receiving supermajority approval under article XIII A, section 4. Nowak argues that if these provisions added by Proposition 13 and Proposition 218 do not apply to voter initiatives, then nothing saves the parcel tax in Proposition G from the prohibiting force of article XIII, section 1.

Nowak reads the prohibition of article XIII, section 1 too broadly, for case law interprets the provision as not reaching a special tax. Nowak relies on precedents that construe article XIII, section 1 to prohibit a parcel tax that is a general tax (see *Digre, supra*, 205 Cal.App.3d at pp. 110–111; *Thomas v.*

18

*City of East Palo Alto* (1997) 53 Cal.App.4th 1084, 1090), ignoring cases in which a parcel tax that is a special tax survives constitutional challenge (see *Heckendorn v. City of San Marino* (1986) 42 Cal.3d 481, 487; *Neilson v. City of California City* (2005) 133 Cal.App.4th 1296, 1308).  Even Nowak's authority recognizes the distinction between general and special taxes as significant.  (See *Digre*, *supra*, 205 Cal.App.3d at p. 110 [*Heckendorn* can "be read as permitting non-ad valorem property taxes approved as 'special taxes' by two-thirds of the voters, while not permitting general ad valorem property taxation"].)

     *Neilson* is particularly instructive because of the court's reasoning in rejecting the idea that local governments lack the power to impose a parcel tax.  The taxpayer in *Neilson* contended that the California Constitution requires real property taxes to be ad valorem, and that article XIII A, section 4 excludes such ad valorem real property taxes from its grant of authority to local governments to impose special taxes, with the result that local governments may impose no tax that is a non-ad valorem (i.e., parcel) tax on real property at all.  (*Nielson*, *supra*, 133 Cal.App.4th at p. 1308.)  *Neilson* rejected this theory because article XIII D, section 3(a) expressly allows *any parcel tax* that is a special tax adopted pursuant to article XIII A, section 4.  Harmonizing these constitutional provisions led the court to conclude that a parcel tax may be imposed "if the tax is a 'special' tax dedicated to specific purposes and approved 'by a two-thirds vote of the' " local electorate.  (*Ibid.*; see also *Valley Baptist Church v. City of San Rafael* (2021) 61 Cal.App.5th 401, 422 ["Proposition 218 confirmed that local government can impose a non-ad valorem special tax 'upon any parcel of property . . .' if the tax is approved by a two-thirds vote of the electorate"].)  As our colleagues in Division One of this court recently explained, "The ad valorem property tax

19

imposed under section 1 of article XIII . . . is, as its name suggests, a general tax based upon the value of the property assessed." (*Valley Baptist Church*, at p. 408, fn. 2.) Article XIII, section 1 does not reach a special tax.

We recognize that these cases upholding special parcel taxes, like the plain language of article XIII D, section 3(a), address parcel taxes approved by a two-thirds vote of the local electorate. But the constitutional provisions the cases construe must also be harmonized with the initiative power reserved to the people in articles II and IV. (See *Board of Supervisors v. Lonergan* (1980) 27 Cal.3d 855, 866 [constitutional provisions should be harmonized whenever possible].) We know that "the people's power to propose and adopt initiatives is at least as broad as the legislative power wielded by the Legislature and local governments." (*California Cannabis*, *supra*, 3 Cal.5th at p. 935.) Moreover, "procedural requirements imposed on the Legislature and local governments do not similarly constrain the electorate's initiative power without evidence that such was their intended purpose." (*Ibid*.) Although "[n]either the Legislature nor the voters may enact a law of a nature that exceeds a limitation on the state's lawmaking power, such as the right of free speech," the electorate need "not generally follow 'legislative' procedures when exercising the initiative power." (*Kennedy Wholesale*, *supra*, 53 Cal.3d at p. 252 & fn. 5.) Such legislative procedures, superfluous to the initiative process, include the requirement for a two-thirds vote. (*California Cannabis*, *supra*, 3 Cal.5th at p. 942; *infra* at p. 21.) Thus, just as article XIII, section 1 does not prohibit a local government from adopting a special parcel tax with voter approval, so it cannot prevent the people, exercising their initiative power, from adopting an identical tax.

We are confirmed in this conclusion by the observation that to hold otherwise would be to construe Proposition 13 and Proposition 218 as having *expanded* local government's authority to tax property. Amicus supporting Nowak asserts that Proposition 13, specifically article XIII A, section 4, "gave rise to a new kind of property tax—a non-ad valorem special tax approved by a two-thirds vote" and Nowak asserts that but for article XIII A, section 4, such a tax would violate article XIII, section 1. Both are characterizing article XIII A, section 4 as having given local governments taxing authority they would not otherwise have had. But section 4 "was intended to circumscribe the taxing power of local government." (*Rider*, *supra*, 1 Cal.4th at p. 6.) And when California voters subsequently passed Proposition 62, we added to the Government Code this directive: "Article XIII A . . . shall [not] be construed to authorize any local government or district to impose any general or special tax which it is not otherwise authorized to impose." (Gov. Code, § 53727, subd. (a).) Nowak's construction of article XIII, section 1, as prohibiting parcel taxes even when they are framed as special taxes, creates a conflict with this directive.

## III. Charter Restrictions on the Initiative Power

Nowak contends that even if these constitutional provisions imposing a supermajority vote of the electorate do not apply to voter-proposed initiatives, the San Francisco Charter applies the same requirement to initiative measures.

Nowak argues that although the Charter recognizes the voters' power to "enact initiatives" (S.F. Charter, § 14.100), this power is limited by the Charter's definition of an initiative as "a proposal by the voters with respect to any ordinance, act or other measure which is within the powers conferred upon the Board of Supervisors to enact" (S.F. Charter, art. XVII). Invoking

21

the principle that "the electorate has no greater power to legislate than the board itself possesses" (*City and County of San Francisco v. Patterson* (1988) 202 Cal.App.3d 95, 104), Nowak argues that the electorate, like the Board of Supervisors, cannot impose special taxes without the concurrence of two-thirds of the voters. We reject this argument because, although the Charter "imposes a substantive limit on the initiative power," it "does not import into the initiative process any procedural limitation on board action, such as the supermajority vote requirements of article XIII A, section 4 or [article XIII C,] section 2(d)." (*Matter of Prop. C, supra*, 51 Cal.App.5th at p. 724.)

Nowak contends that Proposition G's parcel tax is not a measure "within the powers conferred upon the Board of Supervisors to *enact*" because the Board can do no more than *submit* such a measure to the voters for consideration. (S.F. Charter, art. XVII, italics added.) We view this argument as nothing more than a repackaging of the erroneous argument that the supermajority vote requirement is substantive, not procedural. Our Supreme Court has rejected that argument twice. (See *Kennedy Wholesale, supra*, 53 Cal.3d at p. 251 [declining to apply "section 3's requirement of a two-thirds vote . . . to the electorate" because "legislative *procedures*, such as voting requirements" do not "apply to the electorate"]; *California Cannabis, supra*, 3 Cal.5th at p. 942 ["where legislative bodies retain lawmaking authority subject to procedural limitations" including "two-thirds vote requirements [citation], we presume such limitations do not apply to the initiative power absent evidence that such was the restrictions' intended purpose"].)

Nowak's construction would also effect a silent repeal of the people's right to adopt a special tax by citizen's initiative in San Francisco. There is no evidence the people of San Francisco intended this charter provision to tie

their own hands in this manner, and " 'the law shuns repeals by implication.' " (*Kennedy Wholesale*, *supra*, 53 Cal.3d at pp. 249, 252; see also *California Cannabis*, *supra*, 3 Cal.5th at p. 931 ["Without a direct reference in the text of a provision—or a similarly clear, unambiguous indication that it was within the ambit of a provision's purpose to constrain the people's initiative power—we will not construe a provision as imposing such a limitation"].)  In sum, none of Nowak's arguments dissuades us from following *Matter of Prop. C* to conclude that Proposition G was adopted in compliance with the City Charter.

## IV.  Collusion or Cooperation in Qualifying Initiative for the Ballot

Finally, Nowak contends that the two-thirds vote requirement in Proposition 13 and Proposition 218 applies to Proposition G because the District's attempt to evade this very requirement appropriated and undermined the citizens' initiative power.  A similar argument was made and rejected in *Howard Jarvis Taxpayer Association v. City and County of San Francisco*, and we reject Nowak's argument for the same reasons here.  (See *HJTA*, *supra*, 60 Cal.App.5th at pp. 239–241.)

As the trial court explained, San Francisco's charter recognizes two ways to put a measure on the ballot:  voters may propose a measure by initiative petition; or a legislative body such as the Board of Supervisors may propose a measure.  (See *HJTA*, *supra*, 60 Cal.App.5th at p. 241, fn. 9.)  As to the first method, the Charter states that a voter initiative "may be proposed by presenting to the Director of Elections a petition containing the initiative and signed by voters in a number equal to at least five percent of the votes cast for all candidates for mayor in the last preceding general municipal election for Mayor." (S.F. Charter, § 14.101.)  Here, the City's evidence shows that Proposition G qualified for the ballot in this manner.  That evidence

23

consists of a declaration from the Director of Elections and copies of the material that was submitted to the Director by the three citizen proponents of Proposition G.

Without disputing that Proposition G met the criteria set forth in the Charter, Nowak argues that Proposition G was nonetheless subject to a supermajority vote requirement because the District "undermined and improperly appropriated" the initiative process, "improper[ly] collu[ding]" with the Union and others to get Proposition G passed. Nowak bases this argument on *Boling v. Public Employee Relations Board* (2018) 5 Cal.5th 898 (*Boling*).

In *Boling*, several unions filed unfair business practice claims against the city of San Diego after its mayor refused to meet and confer with them regarding a citizens' initiative designed to eliminate pensions for new municipal employees. (*Boling*, *supra*, 5 Cal.5th at pp. 903–904.) The evidence showed that the mayor chose to pursue pension reform by drafting and promoting the citizens' initiative because, among other things, he wanted to avoid compromises that might result if he was required to negotiate with the unions. (*Id.* at p. 905.) Plaintiffs argued, and our Supreme Court agreed, that the city's refusal to negotiate with employee representatives was a violation of the Meyers-Milias-Brown Act, Government Code section 3500 et seq. (the MMBA). (*Boling*, at pp. 903, 908, 918.) The Court explained that the meet-and-confer requirement is a "central feature of the MMBA," which requires governing bodies "to engage with unions on matters within the scope of representation 'prior to arriving at a *determination of policy or course of action*.' [Citation.] This broad formulation encompasses more than formal actions taken by the governing body itself." (*Boling*, at p. 904, quoting Govt. Code, § 3505, italics added.) The meet-and-confer obligation arose when the

24

city's mayor chose to pursue pension reform through a citizens' initiative because the MMBA obligated him, as a policymaker, to meet and confer whether he pursued his pension reform objectives by voter initiative or other course of action. (*Boling*, at pp. 913 & 919.) The Court observed that "[a]llowing public officials to purposefully evade the meet-and-confer requirements of the MMBA by officially sponsoring a citizens' initiative would seriously undermine" the statute's policies of fostering communication and relations between public employers and employees. (*Id.* at pp. 918–919.)

Nowak contends that Proposition G should be declared invalid because the facts of the present case are "nearly identical" to *Boling* and the "same result should follow." This argument ignores that *Boling* was all about the MMBA, a statute of no relevance to this case. The unlawful conduct in *Boling* was not that the mayor sponsored a citizens' initiative, but that he did so without meeting and conferring with the unions. (*Boling*, *supra*, 5 Cal.5th at p. 918.) "*Boling* did not impose the meet and confer requirement on the initiative process—which remained unchanged by the decision—but rather on the designated representative's pursuit of policy changes, regardless of the means chosen." (*HJTA*, *supra*, 60 Cal.App.5th at p. 241.)

Taking a different tack, Nowak contends that Proposition G should be declared invalid under provisions of the Elections Code that require proponents of an initiative measure to file a notice of intent and related documents with the City's elections official and to pay filing fees. (See Elec. Code, §§ 9202 & 9206.) Nowak contends that the summary judgment evidence shows the individuals who identified themselves as proponents of Proposition G did not meet these "mandatory responsibilities" because they did not "file or publish the notice of intent, pay the filing fee, or play any role in the process of authorizing arguments" in favor of Proposition G. These

25

factual allegations are patently argumentative, unsupported by case law addressing the obligations of a ballot measure proponent.  The summary judgment evidence shows that the proponents of Proposition G did not draft ballot materials or use personal funds to pay filing fees, but Nowak cites no authority for the proposition that the City Charter or the Elections Code requires proponents to do these things personally.  Nowak's briefs do not argue that the District misused public funds or misrepresented facts pertaining to Proposition G, and no law precludes a governmental entity "from publicly expressing an opinion with regard to the merits of a proposed ballot measure."  (*Vargas v. City of Salinas* (2009) 46 Cal.4th 1, 36 (*Vargas*).)[5] Undisputed evidence supports the trial court's finding that the official proponents of Proposition G were the three individuals who signed the notice of intent, caused it to be published, and submitted initiative petitions containing the required number of voter signatures.  Like the trial court, we find nothing inherently sinister about the fact that the District and the Union supported this proposition.

Our conclusion is reinforced by *Chula Vista Citizens for Jobs and Fair Competition v. Norris* (2015) 782 F.3d 520, a case cited to us by Nowak.  The case involved a local ballot measure that ultimately prohibited the City of Chula Vista from entering into agreements requiring city contractors to pay a

---

[5] At oral argument, counsel for Nowak urged that we invalidate Proposition G because the District had devoted resources, in the form of time and money, to the initiative's passage.  But Nowak's briefs do not cite or discuss the case counsel quoted in urging this point, *Stanson v. Mott* (1976) 17 Cal.3d 206, nor the more recent case in which our Supreme Court found *permissible* a city's expenditure of resources to disseminate its view of the cuts in city services that would ensue if citizens adopted a proposed anti-tax initiative.  (*Vargas*, *supra*, 46 Cal.4th at p. 40.)  Significantly, Nowak's statement of uncontested facts mentions no City moneys used to qualify Proposition G for the ballot or to promote its passage.

prevailing wage. (*Id.* at p. 524.) Initially, an association of construction-related businesses and an unincorporated ballot measure committee designated themselves as the official proponents of this initiative. But the city clerk refused to process the ballot measure because provisions of the state Elections Code require that an official proponent of an initiative measure be an elector, and his or her name must appear on the face of circulated petitions submitted in support of the measure. (*Id.* at pp. 525–526.) After two city residents agreed to serve as official proponents, the measure was qualified for placement on the city's municipal election ballot and approved by the voters. (*Id.* at p. 526.) Meanwhile, plaintiffs filed a federal action alleging that their constitutional rights to free speech and association were impinged by Elections Code restrictions requiring an official proponent to be an elector and a natural person. (*Ibid.*) The Ninth Circuit rejected this claim, concluding "both the California Constitution and the Chula Vista City Charter plainly reserve to electors the right to be proponents." (*Id.* at p. 527.) In reaching this conclusion, the *Chula Vista* court was unconcerned by the fact that the driving force behind the initiative was not its official proponents but the two associations that "paid for all of the expenses associated with qualifying the initiative for the municipal ballot." (*Id.* at p. 524.)

Nowak also relies on *San Francisco Forty-Niners v. Nishioka* (1999) 75 Cal.App.4th 637 for the proposition that "noncompliance with the Elections Code can result in an initiative's disqualification from the ballot." (*Id.* at pp. 643–644.) In *San Francisco Forty-Niners*, the appellate court affirmed a judgment prohibiting the city's Director of Elections from qualifying an initiative measure for the ballot because the text of the initiative petition contained "deliberately false statements" designed to induce voters to sign

27

the petition, a violation of the Elections Code. (*San Francisco Forty-Niners*, at p. 645.) Nothing comparable is alleged to have happened here. Moreover, Nowak ignores pertinent language in *San Francisco Forty-Niners* confirming this court's duty to "jealously guard the people's right of initiative," and to refrain from intervening in the initiative process unless "there are clear, compelling reasons to do so." (*Id.* at pp. 643–644.) These principles are inconsistent with Nowak's attempt to overturn a citizens' initiative that was approved by majority vote, on the nebulous and legally unsupported ground that the measure's official proponents did not play a sufficiently active role in securing its passage.

## DISPOSITION

The judgment is affirmed.

TUCHER, J.


WE CONCUR:

POLLAK, P. J.
BROWN, J.

| | |
|---|---|
| Trial Court: | City & County of San Francisco Superior Court |
| Trial Judge: | Hon. Ethan P. Schulman |
| Counsel for Appellants: | Greenberg Traurig: Bradley R. Marsh and Colin W. Fraser |
| Counsel for Amicus Curiae on behalf of Appellants: | Howard Jarvis Taxpayers Foundation; Jonathan M. Coupal, Timothy A. Bittle, Laura E. Dougherty |
| Counsel for Respondents: | Dennis J. Herrera, City Attorney; Wayne K. Snodgrass, Deputy City Attorney |